## SMITH VS. HARDY.

(1–4) *Married Woman: Her power to acquire and hold personal property: Title by gift: Change of possession: Presumption.* (5) *Fraudulent Mortgage.* (3–6) *Instructions to jury.*

1. A married woman who has money derived by bequest from her husband's father, may, either in person or by her husband as her agent, purchase personal property with such money for herself to use on real estate belonging to her; and the title to such property will be in her and not in her husband.

2. After a debt secured by a mortgage of personal property became due, the mortgagee accepted from the mortgagor, in settlement thereof, at an agreed valuation, a portion of the mortgaged property and certain other personal property of the debtor (on which there was no specific lien in favor of other creditors), in place of a part of the mortgaged chattels, which had been used or sold by the debtor; and he then turned over the whole of the property so accepted, as a gift to the plaintiff, who was the debtor's wife. *Held,* that if the substituted property was received by the mortgagee at a fair valuation, and applied on the mortgage, plaintiff's title thereto, as against other creditors of her husband, stands on the same footing as her title to the property included in the mortgage.

3. The jury were instructed that as plaintiff claimed by gift, it was essential to the validity of her title that possession of the property should have been delivered to and taken by her, and that if she was the owner and in possession of the farm on which said property was, living on such farm with her family as her homestead, and the property was left with her thereon, they should "determine in the light of these and all other circumstances, whether the property was subject to her control and dominion, or whether it still remained subject to the control and dominion of the husband;" also, that if the farm belonged to plaintiff and was occupied by her, "she had a right to keep the property thereon, and if she did so, exercising control and dominion over it as owner, to the exclusion of all right in any other person, that would be a possession on her part." *Held,* no error.

4. The above instructions having been given, there was no error in neglecting to further submit to the jury the question whether the delivery of the property to plaintiff was followed by an actual and continued change of the possession — where no instruction was asked on that subject, and there was no evidence tending to show any change in the status of the property after its delivery to plaintiff. The jury

having found a valid delivery of the property to plaintiff, the *presumption* is, that it continued in her possession until seized by defendant.

5. The chattel mortgage in question being given by the debtor, X., to his father, and the question being whether it was valid as against certain creditors of X., the jury were instructed, that " if there was a valid subsisting *bona fide* indebtedness of X. to his father, the latter had a right to exact security for the payment thereof, and X. had the right, as against other creditors, to secure his debt by a chattel mortgage which would enable his father to hold the mortgaged property as security for such debt; but if it appeared that this was done, not for the object of protecting the rights of the father, but as a mere cover of the property, to keep it from other creditors of X., then the mortgage was invalid." *Held*, that this must have been understood by the jury as equivalent to an instruction that if the mortgage was given with intent to hinder, delay or defraud the other creditors of X., it was void as against them (R. S., ch. 108, sec. 1); and there was no error.

6. If a correct instruction is contradicted to appellant's injury in other parts of the charge, this may be fatal to the judgment (*Imhoff v. R'y Co.*, 20 Wis., 344); but this was not such a case.

APPEAL from the Circuit Court for *Rock* County.

This is an action to recover the possession of certain articles of personal property, alleged to have been taken and wrongfully detained by the defendant. The complaint is in the usual form. The answer of the defendant admits the taking of the property by him, but avers that the same was the property of one Preston W. Smith (the husband of the plaintiff), and that the defendant seized and took such property (he then being a constable) by virtue of certain attachments and executions against the said Preston W. Smith.

The testimony given on the trial tends to prove that Preston Smith, of Rochester, N. Y., the father of plaintiff's husband, had loaned or advanced money to the latter at different times and in various sums, keeping an account thereof but taking no voucher therefor, and that in 1868, P. W. Smith, at the request of his father, gave the latter his promissory note for $2,000 on account of such loans or advances, which then amounted to more than than that sum, and, to secure the payment of such

note, he also executed to his father a mortgage on a portion of the property in controversy, and on other personal property.

It appears that Preston Smith owned the farm in Rock county on which the plaintiff and her husband resided, and conveyed the same to the plaintiff a short time after the chattel mortgage was given, and that the property therein described was kept on such farm.

In 1870, and after the debt secured by the mortgage was due, the mortgagee sent the mortgage to his agent in Wisconsin, Sidney Allen, for foreclosure; and Allen, acting in strict accordance with his instructions, accepted from the mortgagor, at an agreed valuation, a portion of the mortgaged property, and certain other property on such farm in place of mortgaged property which had been used or disposed of by the mortgagor, and turned the same over to the plaintiff as a gift from her father-in-law. The property thus given to the plaintiff is a portion of that in controversy in this action, and was on her said farm when it was thus turned over to her by Allen.

Subsequently Preston Smith died, leaving a last will and testament, which has been duly proved in the proper court, in which will he bequeathed to the plaintiff $1,500. This legacy has been paid to her in due course of administration. The testimony tends to show that she purchased the residue of the property in controversy with money received by her on account of such legacy. The property seized by the defendant was on the farm of the plaintiff.

The material averments contained in the answer were proved, except that in respect to the ownership of the property. The testimony tends to show that the debts of P. W. Smith on account of which the attachments were issued, or some of such debts, were contracted before he executed the chattel mortgage. The opinion sufficiently states the instructions given to the jury by the circuit judge.

The plaintiff had judgment on a verdict in her favor, for a return of the property, etc.; and the defendant appealed.

*Cassoday & Carpenter*, for appellant :

1. The jury were precluded from passing upon the question whether the transfer was made with a fraudulent intent; though the real issue in the case was, whether such transfer was fraudulent and void within the meaning of sec. 1, ch. 108, and sec. 1, ch. 107, R. S., and at common law. The charge was upon the theory that the only question for the jury to consider, was, whether the husband or the wife had the best title to the property. *Gardinier v. Otis*, 13 Wis., 460 ; *Stephens v. Sinclair*, 1 Hill, 143. 2. These erroneous instructions were not cured by the instructions given in explanation. They should have been entirely withdrawn from the jury. *Imhoff v. Chicago & Mil. R. R. Co.*, 20 Wis., 344, and cases cited ; *Hanford v. Artcher*, 4 Hill, 271 ; *Haskins v. Haskins*, 9 Gray, 390. 3. The explanatory instruction was itself erroneous. It is the meaning of the statute that if the mortgage was given with the intent to defraud, then it was void, notwithstanding such intent was coupled with an intent to secure. *Gardinier v. Otis*, 13 Wis., 460 ; *Pilling v. Otis*, id., 495. 4. The court nowhere attempted to cure the error of instructing the jury in such a way as not to allow them to give the defendant the benefit of the presumption of fraudulent intent by reason of there not being an immediate delivery and change of possession, the want of which threw upon the plaintiff the burden of proof. Sec. 5, ch. 107, and sec. 4, ch. 108, R. S. 5. The fact that the mortgagor was allowed to use the property from time to time, was of itself evidence tending to show fraud in the giving of the mortgage. *Steinart v. Deuster*, 23 Wis., 136 ; *Russell v. Winne*, 37 N. Y., 591.

*H. S. Winsor*, for respondent. [No brief.]

LYON, J. Certain exceptions were taken during the progress of the trial to rulings by the court on objections to the admission of testimony ; but these were not argued by the learned counsel for the defendant, and none of them seem to be relied

on to reverse the judgment. They will not, therefore, be further noticed. This leaves for determination only such questions as are raised by the instructions given to the jury.

The property affected by the action may be divided into three classes: 1. That which it is alleged the plaintiff purchased with money bequeathed to her by her father-in-law. 2. That turned over by her husband to his father, and by the latter (through his agent Allen) to the plaintiff, which was not included in the mortgage, but was so turned over in place of mortgaged property used by the husband; and 3. The property included in the mortgage, which was, in like manner, trans-ferred to the plaintiff. The instructions applicable to each class will be considered in the above order.

1. The court instructed the jury that if the plaintiff had money which she derived by bequest from her father-in-law, she had the right to use it as she saw fit, and if she, either in person, or by her husband as her agent, purchased any of the property in controversy with such money, for herself to use on real estate belonging to her, the title to such property would be in her and not in her husband. The instruction is in strict accordance with the statute concerning the rights of married women. R. S., ch. 95, sec. 3 (Tay. Stats., 1195, § 3).

2. The instruction applicable to the second class above mentioned is to the effect that, if the substituted property was received by the mortgagee at a fair valuation, and applied on the mortgage, it stands on the same footing, as regards the plaintiff's title thereto, with the property included in the mortgage. No fault is perceived in this instruction. We think that it states the law correctly.

3. After the learned circuit judge had instructed the jury at considerable length without mentioning the subject of fraud in the execution of the mortgage, and after he had directed them as to the form of their verdict, whether they should find for one party or the other, he concluded his charge as follows:

"I will add, gentlemen, that if P. W. Smith was indebted to

his father, that is, if there was an actual, valid, subsisting *bona fide* indebtedness against him, P. W. Smith, in favor of his father, while his father had the right to exact security for the payment of that indebtedness, and while P. W. Smith had the right, as against other creditors, to secure that debt by a chattel mortgage which would enable his father to hold the property included in that chattel mortgage as security for the payment of that debt; yet if you find from all the evidence in this case that what was done, was done not with the intention, or with the view, or for the object, of protecting the rights of the father of P. W. Smith, but as a mere cover of this property, to keep it away from other creditors of P. W. Smith, in that case the mortgage would not be a valid mortgage."

It is objected that this is not a correct statement of the law, which declares that every conveyance of goods, etc., made with intent to hinder, delay or defraud creditors, shall be void as against such creditors. R. S., ch. 108, sec. 1 (Tay. Stats., 1257, § 1). The instruction is to the effect that the following conditions are essential to the validity of the mortgage: 1. That it was given to secure a *bona fide* debt; 2. That it was given for the protection of the mortgagee; and 3. That it was not given for the purpose of keeping the mortgaged property from the other creditors of the mortgagor. The fair inference from the instruction is, that if either of these conditions is wanting, the mortgage is invalid; and so we think any juror of ordinary intelligence must have understood it. Hence, the instruction is, substantially, that if the mortgage was given with the intent to hinder, delay or defraud the other creditors of P. W. Smith, it is void as against such creditors, of whom the plaintiff is one. In this form it would have been unobjectionable. The objection seems to be founded upon a mere verbal criticism of the language employed by the judge. If the counsel for the defendant desired that different language should be used, he should have prayed an instruction framed in accordance with his views.

But it is further objected, that, although the instruction above

quoted is correct, still it is contradicted in other portions of the charge. If this is true, it may be fatal to the judgment. It was said in *Imhoff v. The C. & M. R'y Co.*, 20 Wis., 344 (and the same general doctrine has been held by this court in other cases), that "where erroneous instructions are given for one party, the error is not corrected by giving for the other party instructions explanatory, inconsistent with or contradictory to those first given. The erroneous instructions should be withdrawn from the jury." (p. 347.)

The whole charge has been carefully examined, and we fail to find in it any instruction that the plaintiff was entitled to recover the mortgaged property in any contingency, unless the mortgage was free from fraud. It is believed that there is nothing contained in it from which it can reasonably be inferred that the judge intended to give any such instruction. On the contrary, the jury were told that, if the mortgage was invalid, the plaintiff had no title to the property therein described, and, as we have seen, they were further instructed that if the mortgage was executed in fraud of other creditors, it was void.

As to what acts would constitute a valid delivery of the property to the plaintiff (without which she could not take title thereto by gift), the charge is as follows:

"As the plaintiff claims title by gift, it is essential to the validity of that title that possession of the property should have been delivered to her, and that she should have taken possession; but in this case it is claimed that possession *was* delivered and taken as completely as it could be under the circumstances; and if you find from the evidence that the plaintiff was the owner and in possession of the farm on which the property was, living on such farm with her family as a homestead, and that the property was left with her thereon, you will determine, in the light of these and all other circumstances surrounding the case as shown by the evidence, whether the property was subject to her control and dominion, or whether it still remained subject to the control and dominion of her husband.

"If the farm was her property, and she occupied the same, she had a right to keep the property thereon; and if she did so, she exercising control and dominion over it as owner to the exclusion of all right in any other person, that would be possession on her part."

But it is claimed that the question as to whether the delivery of the property to the plaintiff (if there was such delivery) was followed by an actual and continued change of the possession thereof, was not submitted to the jury. This is alleged to be error. There are two answers to the position. One answer is, that no instruction was asked on that subject. The other is, that there is no proof of any change in the status of the property after the alleged delivery thereof to the plaintiff. The jury must have found a valid delivery thereof to her, and, in the absence of proof to the contrary, the presumption is that it continued in her possession until seized by the defendant.

We think that none of the exceptions to the charge are well taken, and must, therefore, affirm the judgment.

*By the Court.*—Judgment affirmed.