Wallach v. Wylie, *as Sheriff.*

## MOSES WALLACH v. WILLIAM H. WYLIE, *as Sheriff, &c.*

1. PARTY, *Not to Impeach His Own Witness; Extent of Rule.* Where a party to a suit introduces in evidence the deposition of the other party, the party introducing the deposition is not bound by every statement made in the same, but may rely upon other statements contained in such deposition, and also introduce other evidence for the purpose of proving his case, although these other statements and this other evidence may tend to contradict and impeach some of the statements made by the said party in his said deposition. The rule that a party shall not impeach his own witness, goes only to the extent that a party shall not introduce evidence for the mere purpose of impeaching one of his own witnesses, and it does not go to the extent that he may not introduce evidence to prove the facts of his case, although incidentally such evidence may impeach or contradict some of the statements made by one of his previous witnesses.

2. DISPOSITION OF PROPERTY, *To Defraud Creditors; Evidence.* Where W. and S. enter into an arrangement to dispose of certain property, for the purpose of hindering, delaying and defrauding the creditors of the owner of such property, and in carrying out such arrangement, S., as the attorney in fact of the owner of the property, executes a chattel mortgage to W., and on the next day S , in conjunction with W., sells and disposes of the remainder of the property belonging to such owner, *held,* in an action between the attaching creditors of the owner of the property and W., to determine which has the prior lien on the property mortgaged to W., that evidence of the disposition of all of such property by S. and W., both that mortgaged to W. and that disposed of by S. and W. on the next day, may be given in evidence for the purpose of showing the nature and character of the entire transactions had between S. and W., and for the purpose of showing whether the chattel mortgage itself was executed for the purpose of hindering, delaying and defrauding the creditors of the owner of the property.

3. CHATTEL MORTGAGE, *Void In Toto.* Where a chattel mortgage was executed, purporting to secure the amount of $7,920 of indebtedness, and there was in fact only the sum of $3,000 of such amount *bona fide* indebtedness, and the remainder of the amount was fraudulent, *held,* that the mortgage was void *in toto,* and that it cannot be sustained even to the extent of the actual debt covered by the mortgage.

4. ATTACHING CREDITORS, *Lien of, Not Defeated; Practice.* Where several attachments are levied upon certain personal property, and afterward the property is replevied by another party, who claims the same by virtue of a chattel mortgage, and while the replevin action is pending, the property is sold by order of the court and the proceeds are held sub-

ject to the further order of the court, and afterward a personal judgment is rendered in favor of the attaching creditors, and no order is then made with reference to the attached property, and afterward in the replevin action a judgment is rendered in favor of the sheriff and against the party claiming under the chattel mortgage, and holding that the lien of the attaching creditors is prior to the lien of the holder of the chattel mortgage, *held*, that the mere fact that a personal judgment only had been rendered in favor of the attaching creditors in the suits between them and the owner of the property, does not defeat the lien of the attaching creditors upon the proceeds of the attached property, nor give to the holder of the chattel mortgage a prior right to the property or to the proceeds thereof.

*Error from Atchison District Court.*

JANUARY 9, 1880, the First National bank of Atchison, Kansas, commenced an action of. replevin in the district court of Atchison county against the defendant in error, *William H. Wylie*, sheriff of said county, to recover from him certain goods, wares and merchandise, of the alleged value of $18,000, and held by *Wylie* as the property of Nathan Stetter, under several attachments issued in several actions against Stetter. On January 10, 1880, the plaintiff in error, *Moses Wallach*, by leave of the court, became a party to said action, and filed his cross-petition, alleging, in substance, that on December 20, 1879, Nathan Stetter was indebted to him in the sum of $7,920, evidenced by certain promissory notes executed by Stetter to him, and that, in order to secure the payment of such notes and the indebtedness represented by them, Stetter, on December 20, 1879, executed and delivered· to *Wallach* a chattel mortgage on the goods, wares and merchandise now in controversy in this action, which mortgage was subject to a certain other chattel mortgage executed to the First National bank upon the same property, to secure the sum of $6,950, with interest, due the bank, which mortgages were duly filed for record, and *Wallach* was placed in the possession of the property ; that while he was so in possession of the property, *Wylie,* as sheriff of Atchison county, forcibly took the same from the possession of *Wallach*, against his protest and with full notice of his rights ; that the sheriff

took the same on certain writs of attachment issued against Stetter, which attachments were subject to *Wallach's* mortgage, and praying judgment that *Wallach's* claim be declared prior to such attachments, and not subject thereto. On January 19, 1880, *Wylie* filed his answer to the petition of the plaintiff, the First National bank. On January 31, 1880, the plaintiff replied. On February 1, 1880, *Wylie* filed his answer to the cross-petition of *Wallach*, in which answer it is alleged that the notes and mortgage set up by *Wallach* in his cross-petition were each fraudulent and void, and executed without any consideration. On February 17, 1880, *Wallach* replied to the answer of *Wylie*. On July 7, 1881, *Wylie*, by leave of the court, filed a supplemental answer in the case, alleging that subsequent to the filing of his original answer several of the attaching creditors of Stetter had obtained final judgments in their suits against Stetter. On July 25 to 29, 1881, the case was tried before the court, without a jury, upon oral and written evidence, and conclusions of fact and law were found and stated in writing by the court. Judgment was rendered in favor of *Wylie* and against *Wallach* that the chattel mortgage executed to *Wallach*, and under which *Wallach* claimed an interest in the property, was fraudulent and void as to the attaching creditors, and that he had no lien or claim upon the property in controversy. *Wallach* now seeks a reversal of such judgment, by petition in error in this court. The other parties to the action seem to be entirely satisfied with the judgment rendered by the court below.

The findings of fact and the conclusions of law as made and rendered by the court below are as follows:

### CONCLUSIONS OF FACT.

1. During the year 1879, up to and including December 20th, and for several years prior thereto, the defendant, Nathan Stetter, carried on business as a merchant in the city of Atchison, in Atchison county, Kansas, through his son, Max N. Stetter, who resided with his family at Atchison, the said Nathan Stetter being during most of said time a resident of New York city. Said Max N. Stetter had a general power of

attorney from his said father to transact the business and to execute all necessary notes and instruments in connection with the business, the said Nathan Stetter giving very little personal attention thereto.

2. The banking business of said Nathan Stetter in Atchison was transacted exclusively through the First National bank of Atchison, the plaintiff herein. The account of said Nathan Stetter was balanced July 1, 1879. From said time the credits of said Nathan Stetter (including said balance) up to and including December 20, 1879, amounted to $38,574.80, and his debits amounted to $38,146.36, leaving a balance to the credit of said Nathan Stetter of $428.44.

3. Said credits of said Nathan Stetter at said bank included the proceeds of six promissory notes and one draft discounted at said bank for the accommodation of said ·Nathan Stetter, who drew the same by said Max N. Stetter, his attorney in fact, duly authorized as follows, namely: Promissory note dated October 13, 1879, for $1,000, payable to the order of said bank in 60 days, with 12 per cent. interest after maturity; promissory note dated October 20, 1879, for $1,200, payable to the order of said bank in 60 days, with 12 per cent. interest after maturity; promissory note dated November 22, 1879, for $1,500, payable to the order of said bank in 60 days, with 12 per cent. interest after maturity; promissory note dated November 26, 1879, for $1,000, payable to the order of said bank in 30 days, with 12 per cent. interest after maturity; promissory note dated December 4, 1879, for $600, payable to the order of said bank in 30 days, with 12 per cent. interest after maturity; promissory note dated December 15, 1879, for $500, payable to the order of said bank in 15 days, with 12 per cent. interest after maturity; draft dated December 20, 1879, for $1,150, upon J. R. Wallach, at sight, protested and payment refused.

4. On December 20, 1879, said Nathan Stetter was indebted to the defendant, Moses Wallach, upon two promissory notes as follows: Promissory note dated July 15, 1879, drawn by said Nathan Stetter, for $1,500, payable to himself or order five months after date, with 10 per cent. interest, and indorsed in blank by said Nathan Stetter; promissory note dated August 10, 1879, drawn by said Nathan Stetter, for $1,500, payable to himself or order four months after date, with 10 per cent. interest, and indorsed in blank by said Nathan Stetter.

And this was all of the *bona fide* or real indebtedness of the said Nathan Stetter to the said Moses Wallach at said time.

(To which conclusion of fact the defendant, W. H. Wylie, as sheriff, then and there duly excepted.)

5. On December 20, 1879, said Nathan Stetter had on hand a large stock of goods, and was very largely indebted to wholesale merchants for the same. He was then and had been for two months in New York city, residing there. Said Moses Wallach also resided in New York city, where he had resided for several years. Said Max N. Stetter was and is the son-in law of said Moses Wallach. Said Max N. Stetter wrote a letter to his father during the latter part of November, 1879, informing him of the embarrassed condition of the business; and on December 2, 1879, said Nathan Stetter wrote to his said son authorizing him to do whatever he thought best, and to mortgage the stock of goods to any of the creditors that he thought should be secured.

6. On or about December 2, 1879, said Moses Wallach came from New York to Atchison, and visited his daughter and his said son-in-law, remaining as their guest at their house. Prior to December 20, 1879, he had been informed of the condition of the business, and knew that if the creditors urged their claims the business must suspend and said Nathan Stetter fail. By connivance with said Max N. Stetter, he obtained the four promissory notes described in the answer of said Moses Wallach, (other than the two promissory notes referred to in conclusion of fact No. 4,) said four promissory notes amounting to $4,920 on their face, without interest; but the same did not represent any real and *bona fide* indebtedness of the said Nathan Stetter.

7. On December 20, 1879, said Moses Wallach urged said Max N. Stetter to execute to him a mortgage to secure the payment of said six promissory notes, amounting to $7,920, and by arrangement between said Moses Wallach and Max N. Stetter, it was agreed that said Max N. Stetter, as attorney in fact for said Nathan Stetter, should execute three chattel mortgages on said stock of goods—the first being to the plaintiff, the First National bank of Atchison; the second to Moses Wallach, defendant, and the third to Everest & Waggener. Said Nathan Stetter was not indebted to said Everest & Waggener at said time; but they being attorneys at law in Atchison, and the attorneys of said bank, the sum of $1,000 was agreed upon as a retainer and attorney-fee in consideration of their services in drawing said mortgages, and in defending the same against the claims of other creditors. It was also agreed that W. W. Guthrie, another attor-

ney at law of Atchison, should be retained and employed for the same purpose, at the sum of $1,000.

8. In pursuance of said agreement, said Max N. Stetter, as attorney in fact for said Nathan Stetter, on December 20, 1879, executed a chattel mortgage to the plaintiff to secure the indebtedness represented by the six promissory notes and the draft described in conclusion of fact No. 3, and a second mortgage to the defendant Moses Wallach to secure the amount claimed by him on the six promissory notes set forth in the answer of said Moses Wallach and the promissory note of $1,000 payable to Everest & Waggener, and the third chattel mortgage to secure the same; true copies of which promissory note and mortgage respectively are set forth in the answer of the defendants Hetherington & Co. A true copy of the mortgage executed to Moses Wallach is annexed, as exhibit A, to the answer of said Moses Wallach. The mortgage executed to the plaintiff had a stipulation as to taking possession by the mortgagee similar to that contained in the mortgage to said Moses Wallach.

9. Said three chattel mortgages, and each of them, conveyed the entire stock of goods held and owned by said Nathan Stetter in the city of Atchison. Said Nathan Stetter, by his said son, Max N. Stetter, had a short time before established branch stores at Emporia and Newton, Kansas, which were supplied mainly by the Atchison store. As soon as the business of giving the mortgages and taking possession thereunder was completed, on Saturday afternoon, and by the first train thereafter, Max N. Stetter and Moses Wallach went to Emporia, and on Sunday, December 21, 1879, said stocks of goods at Emporia and Newton were disposed of to one E. Helfer, for $9,000. Said N. Stetter was indebted to E. Helfer in the sum of $1,500, and the residue was paid for by several small unsecured promissory notes of the said E. Helfer. The arrangement was all made on Sunday, and the papers drawn, but they were not signed or delivered until Monday morning, December 22.

Said Nathan Stetter, by his said attorney, Max N. Stetter, used $4,000 of said notes in paying certain preferred and unsecured creditors, and the remainder of said notes, $3,500, he turned over to said W. W. Guthrie, absolutely in payment of said attorney-fee of $1,000. Said Moses Wallach had full knowledge of and participated in all the transactions mentioned in this conclusion of fact.

10. Said three chattel mortgages were delivered to said

First National bank, Moses Wallach and Everest & Waggener, respectively, about 4 o'clock P. M., December 20, 1879, and they were filed for record in the proper office of register of deeds, in Atchison county, about 4:30 o'clock P. M. of said day; and at about the same time said mortgagees, with consent of said Max N. Stetter, as attorney in fact for Nathan Stetter, took full and complete possession of said stock of goods, and placed Henry T. Smith in custody thereof, as their agent.

11. Before the maturity of said promissory note executed to said Everest & Waggener, for $1,000, said Everest & Waggener duly assigned and transferred said promissory note to the defendants Hetherington & Co., for a valuable consideration; and it is found by the court that there is no defense to said promissory note in the hands of said Hetherington & Co., and that their claim under said note and mortgage is a lien upon said stock of goods or the proceeds thereof.

12. On December 20, 1879, Edson Keith, Eldridge Keith and James L. Woodward, partners as Keith Brothers, commenced an action against said Nathan Stetter, in this court, at about 5:30 o'clock P. M., and by due proceedings they obtained an order of attachment in said action, and the summons and the order of attachment came into the hands of the defendant Wm. H. Wylie, then sheriff of this county, and an officer of this court, at about said time; and at about 6 o'clock P. M. of said day, said sheriff, by virtue of said order of attachment, seized and took possession of said entire stock of goods in said store at Atchison, as the property of said Nathan Stetter, and took them out of the custody and control of said mortgagees and their said agent; and immediately thereafter he began to take an inventory and appraisement of said stock of goods, and proceeded in said action in the manner prescribed by law in attachment proceedings. But before the completion of said inventory and appraisement, several other orders of attachment issued out of the office of the clerk of this court against the said Nathan Stetter, in cases wherein persons claiming to be creditors of the said Nathan Stetter were plaintiffs, came into the hands of said sheriff for service, and he levied said subsequent attachments upon said stock of goods in the order in which they came into his hands, subject to the said attachment of Keith Brothers, and as inventoried and appraised in that case, in the manner provided by statute; the next attachment in order of time being in

the case of Hart Brothers, and the next two attachments in order of time being those in the cases of the International bank of Chicago and Simon Strauss & Co., (which came into the hands of the sheriff,) and were levied at the same time, and the next attachment in order of time being in the case of A. Frankenthal & Bro., and the next attachment in order of time being in the case of Carson, Pirie, Scott & Co., and the next attachment in order of time being in the case of William Ziock & Co., and the next attachment in order of time being in the case of Selz, Schwab & Co.— all of said cases being brought against said Nathan Stetter as defendant. Several other orders of attachment issued out of the office of the clerk of this court were also levied upon said stock of goods — the whole amount of the attachments being over $20,000.

13. The plaintiff, before the commencement of this suit, had given notice that it would sell said stock of goods under its chattel mortgage on January 26, 1880, and having been authorized to do so by the order of this court, made January 19, 1880, it proceeded to and did sell said stock of goods at said time, the amount realized being $18,080, and the total expenses of said sale and compensation for taking care of and selling the same being $435.71, leaving the net proceeds of said sale $17,644.29, which sum has been ever since said sale and now is in the hands of the plaintiff, subject to the order of the court in accordance with said order of January 19, 1880.

14. Said Wm. H. Wylie was the duly elected, qualified and acting sheriff of said county continuously from December 1, 1879, until after the commencement of this action; and before the commencement of this action, and after the sheriff levied said writs of attachment upon said stock of goods and took possession thereof, B. P. Waggener, acting as agent and attorney for said mortgagees and for said Hetherington & Co., and duly authorized in that behalf, made demand upon said sheriff for the possession of said goods, and said sheriff refused to comply with said demand; and said sheriff held possession of said goods under said writs of attachment until they were taken from his possession under the writ of replevin in this action, and the goods levied upon and seized by said sheriff under said writs of attachment are the identical goods described in said three mortgages and replevied in this action.

15. At the June term, 1881, of this court, said attachment still existing in force the same as when originally levied

10 — 28 KAS.

and return thereof made, personal judgments were rendered against said Nathan Stetter in favor of the following-named plaintiffs, on the days herein specified, namely: June 16, 1881, Keith Brothers, $538.29 and costs; June 16, 1881, Hart Brothers, $565.83 and costs; July 2, 1881, the International bank of Chicago, $3,456.82 and costs; July 2, 1881, Simon Strauss & Co., $1,216.14 and costs; June 17, 1881, .A. Frankenthal & Brother, $481.42 and costs; June 17, 1881, Carson, Pirie, Scott & Co., $1,840.96 and costs; June 17, 1881, William Ziock & Co., $247.76 and costs; July 21, 1881, Selz, Schwab & Co., $1,310.15 and costs. No order of sale, nor any other order respecting said attachments, was made by the court in said actions, nor in any of them, but said judgments are ordinary personal judgments for debts and costs, without any other order or judgment whatever.

16. Said mortgage to said Moses Wallach was made by the said Max N. Stetter, as attorney in fact for the said Nathan Stetter, and was received by the said Moses Wallach with intent to hinder, delay and defraud the creditors of said Nathan Stetter of their just and lawful debts to the extent of the four promissory notes referred to in conclusion of fact No. 6, amounting to $4,920; and said mortgage of $1,000 to Everest & Waggener, and said payment of $3,500 in promissory notes to W. W. Guthrie in lieu of $1,000 in money, were made with full knowledge of Moses Wallach as a part of one entire transaction, having in view the defense of the entire mortgage claim of said Moses Wallach against the other creditors of said Nathan Stetter.

### CONCLUSIONS OF LAW.

1. At the time of the execution of the chattel mortgage to the plaintiff there was a valid and subsisting indebtedness in its favor against Nathan Stetter for the amount of said six promissory notes, and also for the amount of said draft, less the balance of $428.49 standing to the credit of said Nathan Stetter on the books of the bank.

2. At the commencement of this action the plaintiff had the legal title to and the immediate right of possession of the property in controversy, as against all of the defendants, to the extent and for the purpose of making said indebtedness out of said property.

3. Said indebtedness not having been paid, but the proceeds of the sale of the property having been held by the

plaintiff subject to the order of the court, the plaintiff is en-
titled to interest according to the tenor of said evidences of
indebtedness, except on the balance of $428.49, which should
be deducted from the amount of said draft, and interest com-
puted on the residue only, as follows:

| | | |
|---|---|---|
| Principal of the six promissory notes | | $5,800 00 |
| Interest thereon to this date at 12 pr ct | | 1,103 41 |
| Principal of draft | $1,150 00 | |
| Less balance to Stetter's credit | 428 49 | |
| | | 721 51 |
| Interest on balance of draft to this date at 7 pr ct | | 81 96 |
| Total principal and interest | | $7,706 88 |

And plaintiff is entitled to retain said sum out of the pro-
ceeds of the sale now in its possession.

4. The claim of Hetherington & Co. upon their note and
mortgage is a valid and subsisting lien upon said property or
the proceeds thereof.

5. At the commencement of this action said Hetherington
& Co. had the legal title to and the immediate right of pos-
session of the property in controversy to the extent and for
the purpose of making said indebtedness out of said property.

6. Said indebtedness to said Hetherington & Co. has not
been paid, nor any part thereof, and the amount now due
thereon, including interest up to this date, is $1,184.70, and
said Hetherington & Co. are entitled to said sum out of the
net proceeds of the sale of said property now in the hands
of the plaintiff.

7. Said mortgage to Moses Wallach, being in fraud of the
creditors of said Nathan Stetter, who had attachments in the
hands of said Wm. H. Wylie, sheriff, and whose claims
have since been reduced to judgment, is to be deemed utterly
void and of no effect.

8. The property attached in said actions against Nathan
Stetter and replevied in this action having been sold under
the order of this court and the proceeds held subject to the
further order of the court, no order or sale or other order
was necessary in said attachment actions to preserve the liens
of said Wm. H. Wylie, sheriff; and said attaching creditors,
by reducing their claims to judgment, obtained an equitable
lien upon the net proceeds of the sale of said goods, accord-
ing to their several priorities, subject to the prior claims of
the plaintiff and said Hetherington & Co.

9. The plaintiff and said Hetherington & Co. are entitled
to recover their costs herein against said Wm. H. Wylie,

sheriff; said Moses Wallach should pay his own costs and said sheriff his own costs.

10. After payment of the amounts above found due to the the plaintiff and said Hetherington & Co., together with their costs, said Wm. H. Wylie, sheriff, is entitled to the remainder of said fund to apply on said several judgments rendered against said Nathan Stetter, and the costs therein, according to the priorities of the attachments therein, as shown by conclusion of fact No. 12.

*W. W. Guthrie;* and *Everest & Waggener,* for plaintiff in error.

*H. M. Jackson,* and *Wm. McNeill Clough,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of replevin, and the main question involved in the case is, which had the prior right to the possession of the property in controversy — Moses Wallach, or William H. Wylie? The property originally belonged to Nathan Stetter, and Wallach claimed the possession of the same by virtue of a chattel mortgage executed to him by Max N. Stetter, attorney in fact of Nathan Stetter; while Wylie claimed the property by virtue of several attachments which he, as sheriff of Atchison county, Kansas, had previously levied upon the same. These attachments had all been issued in actions brought by creditors of Nathan Stetter. The case was tried by the court below, without a jury, and the court found in favor of Wylie and against Wallach, and rendered judgment accordingly.

I. The plaintiff in error, Wallach, claims, as a first ground of error, that some of the findings of fact were not sustained by sufficient evidence. In this we think the plaintiff in error is mistaken. It is true that the direct evidence of Wallach and of Max N. Stetter was in favor of Wallach, but there was a great number of circumstances connected with transactions involved in the case which were against Wallach's theory of the case; and we think these circumstances were sufficient to overbalance and overturn the direct evi-

dence of both Wallach and Max N. Stetter. We think, however, that it is unnecessary to discuss the evidence, as no useful purpose could be subserved thereby. Involved in this question of the sufficiency of the evidence, however, is a question of law, which we shall discuss as follows: Wylie introduced in evidence the deposition of Wallach, taken on behalf of Wylie; and the plaintiff in error, Wallach, now claims that Wylie was and is bound by everything that was testified to in such deposition by Wallach. This certainly is not the law, and such a thing never was the law. It is true, that when a party introduces a witness, he cannot then impeach the general character or reputation of such witness for truth and veracity; and it is generally true, that he cannot show that the witness has made statements at other times and at other places contradictory to those which he testifies to. But neither of those cases is this case. Wylie did not attempt to impeach the general character or reputation of Wallach for truth and veracity, nor did he attempt to show that Wallach had made statements at other times and at other places contradicting the statements made by him in his deposition; although Wylie would certainly have had the right in the present case to show such contradictory statements, for the very good reason that Wallach himself was a party to this action. Wylie could have shown such contradictory statements, not for the purpose of impeaching Wallach, but as original evidence — original evidence of Wallach's admissions.

The principal fact in controversy in this case was, whether the chattel mortgage executed to Wallach by Max N. Stetter, as the attorney in fact of Nathan Stetter, was executed for the purpose of hindering, delaying and defrauding the creditors of Nathan Stetter, or not; and the deposition of Wallach was introduced by Wylie for the purpose of proving, or tending to prove, that it was; and of course Wylie believed that it did prove, or tend to prove, that fact. It is true that all the direct statements made by Wallach upon the subject were to the effect that the mortgage was executed in good faith, and

not for the purpose of hindering, delaying or defrauding the creditors of Nathan Stetter; but the deposition also contained many statements of facts and circumstances which Wylie believed proved, or tended to prove, that the mortgage was not executed in good faith, but was executed for the purpose of defrauding the creditors of Nathan Stetter, and which statements of facts and circumstances Wylie believed were sufficient to overturn and destroy all the direct statements of good faith made by Wallach, and prove the very reverse.

The plaintiff in error, Wallach, seems to claim that Wylie is bound by the direct statements of Wallach, and that he cannot use the facts and circumstances testified to by Wallach to overturn these direct statements. This claim is certainly erroneous. Supposing that these direct statements in fact proved, or tended to prove, one thing, and that the detailed facts proved, or tended to prove, the reverse, and that the detailed facts were sufficient to overbalance and overturn the direct statements: then why should Wylie be bound by the direct statements, in preference to the detailed statements of the facts? Wylie certainly had a right to introduce in evidence the deposition of Wallach as a whole, and to rely upon what it would prove or disprove as a whole, although taking it as a whole, it would disprove some of the direct statements made by Wallach. A party never was concluded by the statements of any one of his witnesses. He always had the right to introduce other competent testimony to prove his case, although such testimony might contradict the statements of a previous witness, and might incidentally tend to impeach the testimony of such previous witness. (1 Greenl. Ev., §§ 443 to 444a; Wharton's Ev. in Civil Cases, § 549.) The rule that a party shall not impeach his own witness, goes only to the extent that a party shall not introduce evidence for the mere purpose of impeaching one of his own witnesses; and it does not go to the extent that he may not introduce evidence to prove his case, although incidentally such evidence may impeach or contradict one of his previous witnesses. Mr. Wharton says, in his work on Evidence (see section just cited) that "In this country, while

a party cannot ordinarily discredit his own witnesses, his right to contradict such evidence is unquestioned." Many of the detailed facts and statements which Wylie proved by Wallach's deposition could not have been proved by any other witness, and hence there was a strong and unavoidable necessity for Wylie to make Wallach one of his own witnesses; but in doing so, he did not place himself in the helpless condition of being ruthlessly and inexorably bound by all the statements made by Wallach in Wallach's own favor. He still had the right to introduce other testimony, the testimony of Wallach himself, and of other witnesses, if they could be found, to prove that the facts of the case were not such as Wallach stated them to be in his general statements.

II. The plaintiff in error, Wallach, also claims that the court below erred in admitting certain evidence of Henry Friend and others, tending to show transactions had between Stetter and others after the execution of the chattel mortgage to Wallach, and wholly unconnected with the execution of such chattel mortgage. Now the law upon this subject is just as it is claimed to be by the plaintiff in error, but such law has no application to this case. The transactions had after the execution of the chattel mortgage were not separate and independent transactions, but were parts and portions, along with the execution of said chattel mortgage of one general scheme, plan and arrangement, had between Wallach and Max N. Stetter, who was Wallach's son-in-law, to dispose of the property of Nathan Stetter, so as to hinder, delay and defraud the creditors of Nathan Stetter. This is the theory upon which Wylie and the attaching creditors introduced the evidence; and we think the evidence in the case sustains such theory, and that the evidence objected to was competent. The chattel mortgage was executed on Saturday, December 20, 1879, in conjunction with other transactions had at the same time at Atchison, Kansas, all appearing to be fraudulent; and immediately thereafter, Wallach and Max N. Stetter went to Emporia, Kansas; and on Sunday, December 21, 1879, Max N. Stetter, the attorney in fact of

Nathan Stetter, in conjunction with his father-in-law Wallach, sold and transferred two stocks of goods belonging to Nathan Stetter, one situated at Emporia, Kansas, and the other at Newton, Kansas. In connection with this case, and with reference to the same transactions, see *Keith v. Stetter*, 25 Kas. 100; *Moon v. Helfer*, 25 Kas. 139; *Simon v. Stetter*, 25 Kas. 155. These transactions at Emporia were unquestionably fraudulent, and were part and portion of the general plan and arrangement previously entered into between Wallach and Max N. Stetter, to hinder, delay and defraud the creditors of Nathan Stetter, of which the execution of the chattel mortgage on the day before was another part and portion of the same general plan and arrangement. The evidence of the transactions at Emporia is the evidence of which the plaintiff in error, Wallach, complains. But we think it was competent, as a part of a general whole, of which the execution of the mortgage was another part of the same general whole. The transactions at Emporia were not unconnected with Wallach or with the execution of his chattel mortgage, but were simply additional transactions in carrying out the same general design and purpose; and Wallach was probably the brains and soul of all of them.

III. The chattel mortgage executed by Max N. Stetter to Wallach purported to secure the sum of $7,920 of indebtedness due from Nathan Stetter to Wallach. The court below found that the sum of $3,000 of this amount was *bona fide* indebtedness, and that the sum of $4,920 thereof was fraudulent, and was merely a pretended indebtedness without any basis therefor. And then the court held, as a conclusion of law, that as a portion of the indebtedness pretended to be secured by the chattel mortgage and the larger portion thereof was fraudulent, it rendered the whole mortgage utterly void and of no effect. Of this conclusion of law the plaintiff in error, Wallach, now complains. We think, however, that this conclusion of law is correct. The statutes of this state provide that every transfer of property, made " with the intent to hinder, delay, or defraud creditors,

. . shall be deemed utterly void and of no effect," (Comp. Laws of 1879, p. 464, § 2;) and this chattel mortgage was unquestionably executed with just such an intent and for just such a purpose. Mr. Jones, in his work on Chattel Mortgages, § 339, says that "An overstatement of the amount secured, made with a fraudulent intent to hinder, delay and defraud the mortgagor's creditors, renders the mortgage void;" and further he says, (§ 350,) that "If a mortgage be void because of an intention participated in by both parties to delay, hinder and defraud the mortgagor's creditors, it is fraudulent *in toto*, and cannot be supported to any extent as against such creditors; it cannot be supported to the extent of an actual debt covered by such mortgage." And he also says, in the same section: "A mortgage which contravenes the insolvent laws as to some portion of the debt secured is wholly void." See authorities cited by Mr. Jones; and also authorities cited in brief of counsel for defendant in error, as follows: *Horton v. Williams*, 21 Minn. 187; *Russell v. Winne*, 37 N. Y. 591–6; *Rich v. Levy*, 16 Md. 74; *Robinson v. Holt*, 39 N. H. 557; *Young v. Pate*, 4 Yerg. 164; *Butts v. Peacock*, 23 Wis. 359; *Kayser v. Heavenrich*, 5 Kas. 324; *Smith v. Hardy*, 36 Wis. 422; *Henderson v. Henderson*, 55 Mo. 555; *Tompkins v. Wheeler*, 16 Pet. 118.

IV. The plaintiff in error, Wallach, also claims that the court below erred in this case in rendering judgment in favor of Wylie and against Wallach, because the attaching creditors in the other suits took personal judgments in their favor against Nathan Stetter without any order with reference to the attached property. There was no error in this. All of the attached property had been previously sold, and the proceeds thereof were then held subject to the further order of the court; and all this had been done by the express order, direction and permission of the court. Hence there was no necessity, at the time that the court rendered the several judgments in the attachment cases, to make any further orders for the disposition of the attached property; there was really nothing to dispose of, except the proceeds of the property.

When this suit and all the attachment suits are finally determined, the court may make a general order disposing of the proceeds of the attached property as shall be just and proper.

The judgment of the court below will be affirmed.

All the Justices concurring.