## W. W. WINSTEAD, *as Sheriff, &c.*, v. G. H. HULME.

1. ATTORNEY'S FEES, *When Not Recovered.* In an action to recover the possession of personal property, the plaintiff is not entitled to recover as actual damages attorney's fees for the prosecution of the case, when the elements of malice, gross negligence or oppression do not mingle in the controversy.

2. EXEMPLARY DAMAGES—*Sheriff, When Not Liable.* In an action against a sheriff to recover the possession of personal property wrongfully seized by the officer under an execution in his hands, the sheriff, if not guilty of fraud, malice, gross negligence or oppression in the execution of the process, is not liable in vindictive or exemplary damages.

3. CHATTEL MORTGAGE, *Fraudulent in toto.* Where a chattel mortgage or a written assignment of personal property is executed in part to indemnify the mortgagees or assignees against a possible liability on a redelivery bond, and another and important object of the instrument is to delay, hinder and defraud the creditors of the mortgagors or assignors, and such intention is participated in by all the parties thereto, such instrument is fraudulent *in toto*, and cannot be supported to any extent as against such creditors.

*Error from Barton District Court.*

ACTION by *Hulme* against *Winstead*, as sheriff of Barton county, commenced August 29, 1879, to recover possession of certain goods and chattels of the value of $270.65. The petition also alleged that the defendant, by the unlawful seizure of

the goods and chattels, damaged and injured the business of plaintiff in the sum of $2,300. On September 25, 1879, the defendant filed his answer, in which he generally denied all the allegations of the petition. At an adjourned term of court, and on March 7, 1883, the cause came on for trial before the court and jury. The jury returned the following verdict, omitting title:

"We, the jury impaneled and sworn in the above-entitled cause, do upon our oath find for the plaintiff that he have the return of the goods described in the affidavit in this case, or if they cannot be returned, then that the plaintiff recover of the defendant the value of said goods, assessed at $270, together with $190 as damages for their unlawful taking and detention."

The jury also made the following special findings of fact:

"1. Did Hulme & Negbaur sign a redelivery bond for about $7,000 in the case of B. D. Buford v. Baum & Baum? A. Yes.

"2. Did B. Negbaur make arrangements with G. H. Hulme that the goods in controversy were to be turned over to G. H. Hulme as his own property? A. Yes.

"3. Did W. W. Winstead levy executions in the cases of Bridge, Beach & Co. v. Baum & Baum, and Sligo Iron Store v. Baum & Baum, and Hibbard & Spencer v. Baum & Baum? A. Yes.

"4. Did Winstead know at the time he levied the executions on the goods in this case, that Hulme claimed to own the goods? A. Yes.

"5. Did the sheriff levy on all the goods in controversy under the direction of the agents of the creditors of Baum & Baum? A. Yes.

"6. Did Hulme & Negbaur, under the agreement between Baum & Baum, have the possession of all the goods named in the invoice, after its execution between them and Baum & Baum? A. Yes.

"7. What was the value of the goods replevied in this case? A. $270.

"8. What amount of damages did G. H. Hulme sustain by reason of the unlawful seizure of the goods in this case by the sheriff? A. $190."

The defendant filed his motion for a new trial, which was

overruled; and thereupon the court rendered judgment upon the verdict of the jury that the plaintiff recover from the defendant the possession of the goods and merchandise described in plaintiff's petition, of the value of $270, and the sum of $190, his damages sustained, and also that he recover all costs.

Hulme claimed to be the absolute owner of a small portion of the property, but the greater portion he claimed possession of by virtue of the following written instrument:

"Whereas, the firm of Baum & Baum, hardware merchants, of Great Bend, Kansas, did, on the 2d day of July, 1879, under the fraudulent representations of the agent of one B. D. Buford & Co., of Illinois, execute and deliver to the said agent a chattel mortgage in favor of the said B. D. Buford & Co., for the sum of nineteen hundred dollars on their entire stock of merchandise, due November 1, 1879; and whereas, it appears that said mortgage was wrongfully and fraudulently obtained from said Baum & Baum, and for the purpose and with the intent to close up, injure and destroy the business of said firm; and whereas, said B. D. Buford & Co. did, on the 17th day of July, 1879, in violation of their agreement with said Baum & Baum, obtain from the clerk of the district court of Barton county, Kansas, an order of delivery against said Baum & Baum for all and singular the goods, wares and merchandise of the said Baum & Baum, in Barton county, Kansas, in and about their store in Great Bend, as named in said chattel mortgage, and including the tools of said Moses Baum; and whereas, the sheriff of Barton county did take possession of all and singular the goods, wares and merchandise of said Baum & Baum; and whereas, the said B. D. Buford & Co. in their affidavit did state and allege that all of said property was of the aggregate value of three thousand six hundred and two and $\frac{5}{100}$ dollars; and whereas, the law in such cases made and provided requires the plaintiff to execute a bond in double the value of the goods or property as stated in said affidavit of said plaintiff; and whereas, said Baum & Baum were required in said cause of B. D. Buford & Co. *v.* Baum & Baum to give a redelivery bond in the sum of seven thousand five hundred dollars, conditioned that the said property or its appraised value in money should be forthcoming to answer the judgment of the court in such cause of B. D. Buford & Co. *v.* Baum & Baum; and whereas, G. H. Hulme and B. Negbaur did sign and execute and deliver to

the sheriff of Barton county, Kansas, a redelivery bond in the sum of seven thousand five hundred dollars, conditioned as provided by law in cases of redelivery, under the laws of Kansas; and whereas, the said Baum & Baum desire to secure the said G. H. Hulme and B. Negbaur from any loss by reason of making, executing and delivering to said sheriff in said cause of B. D. Buford & Co. *v.* Baum & Baum, said bond of seven thousand five hundred dollars for the redelivery of said goods; and whereas, the said Baum & Baum desire that said goods and merchandise shall be disposed of in such a manner that will save the largest amount possible to pay the outstanding indebtedness of said firm, and for the purpose of saving the said G. H. Hulme and B. Negbaur harmless and free of all expenses, damages, attorney's fees, and costs of all kinds whatsoever, arising out of or in any manner connected with the signing of said bond, or the sale and custody of said goods, as hereinbefore described in said suit of B. D. Buford & Co., *v.* Baum & Baum:

"Now, therefore, for the purpose above set forth, and in consideration of the signing of the bond, as hereinbefore fully described, we do hereby assign, sell, transfer and set over to G. H. Hulme and B. Negbaur our entire stock of goods, wares, and merchandise, consisting of hardware, tinware, stoves, plows, agricultural implements, scales, tinners' tools, and all goods and personal property not exempt by law from being applied to payment of debts, in and about the business of said firm, to have and to hold, to said G. H. Hulme and B. Negbaur forever; a more complete list of the goods hereby sold and transferred is hereunto annexed, made a part hereof, marked Exhibit 'A,' to which reference is hereby made. And it is hereby expressly agreed and understood that the said G. H. Hulme and B. Negbaur are to have the exclusive possession and control of all and singular of said goods and merchandise, and may proceed to sell the same in such manner as they may deem advisable for securing the most money for said goods and merchandise; and shall have the full authority to conduct the said business of selling said property at the old stand of said firm, or at such other place as they may deem best for all concerned; that said parties shall keep a true account of all sales of goods, and of all moneys received for or on account of the sale of any of said goods; that the proceeds of the sale of any of said goods, and goods remaining unsold, shall be kept by the said G. H. Hulme and B. Negbaur until the case of B. D. Buford & Co. against Baum

& Baum shall have been fully decided and determined and fully settled and adjusted, and until all costs, expenses, attorney's fees, damages and trouble of said G. H. Hulme and B. Negbaur are paid and fully settled. Now if the said Baum & Baum shall hold the said G. H. Hulme and B. Negbaur harmless in every manner as herein described, and pay them all and singular any costs or expenses incurred in any manner in and about the care and custody of said goods, and harmless for any costs or expenses on account of signing said bond as hereinbefore described, then, and not till then, shall this transfer be void. Witness our hands, this 8th day of July, 1879. BAUM & BAUM."

(Exhibit "A" omitted.)

The defendant excepted to the rulings and judgment of the court, and brings the case here.

*C. P. Townsley, Maher & Osmond,* and *W. C. Webb,* for plaintiff in error.

*G. W. Nimocks,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action by defendant in error, plaintiff below, against plaintiff in error, defendant below, to recover the possession of certain goods and merchandise of the value of $270.65. The petition also alleged that by the unwarranted and unlawful seizure of the goods and merchandise, the defendant was damaged in his business in the sum of $2,300. The prayer of the petition was for the possession of the goods and merchandise and for $2,300 damages. At the time this action was commenced, the defendant below was sheriff of Barton county, and, as sheriff, had in his hands three executions against the firm of Baum & Baum. To satisfy these executions, by the direction of the creditors of said firm he levied upon the personal property in controversy as belonging to them, but which at the time of the levy was in the hands of the plaintiff below, who claimed to be the absolute owner of a portion of the property, and claimed the greater portion under a chattel mortgage given by Baum & Baum to Hulme and Negbaur.

Upon the trial, the court permitted plaintiff below to give evidence that he expected to pay his attorney $100 for the prosecution of the action; that he was damaged in the sum of $150 on account of the time he was obliged to give to the matters connected with the action; that his credit was damaged by the levy in the sum of $400. The court refused to instruct the jury that the plaintiff below was not entitled to attorney's fees incurred in conducting the suit; refused to intruct the jury not to allow plaintiff below any damages for loss of his time spent in and about the suit; and refused to instruct the jury not to allow any damages unless definitely proved.

On the other hand, the court directed the jury as follows:

"If you are satisfied that the plaintiff has the right to recover the property sued for in this case, then I charge you that he has a right to recover as damages for the taking and detention of said property, such actual damages as from the evidence you believe he has sustained, including such cost and expense as he necessarily incurred to recover the property back and place it in the position in which it was when taken."

This instruction, in view of the evidence, was misleading, and therefore erroneous. In an action of this kind, unless the elements of malice, gross negligence or oppression mingle in the controversy, the law does not allow the jury to find what are termed exemplary or vindictive damages. As evidence was before the jury tending to prove the attorney's fees of plaintiff below, the amount claimed by him for compensation for attending the action and the damages to his credit, the jury may have supposed, under the direction given, that these sums were actual damages which the plaintiff below was entitled to recover. A sheriff, in seizing goods under a writ of execution, is responsible in damages if he takes the goods of the wrong person; and if acting under color of process he is guilty of fraud, malice, gross negligence, or oppression in the execution of the process, he may be held liable in exemplary damages. (*Wiley v. Keokuk*, 6 Kas. 94; *Nightingale v. Scannell*, 18 Cal. 315; *Cable v. Dakin*, 20 Wend. 172.) But where a sheriff wrongfully seizes property upon an exe-

cution in his hands and there is no malice, gross negligence, oppression or improper motive on his part in the seizure, he is not liable in exemplary or vindictive damages. (*Wiley v. Keokuk*, supra; *Phelps v. Owens*, 12 Cal. 22; *Dorsey v. Manlove*, 14 id. 553; *Nightingale v. Scannell*, supra; *Bell v. Campbell*, 17 Kas. 212, and cases cited.) Therefore, if in this case exemplary damages were allowable on account of the conduct of the officer, the court should have expressly directed the jury not to allow such damages, unless the sheriff was guilty of fraud, malice, or willful wrong. If exemplary damages were not allowable, the jury should not have considered, in assessing damages, the evidence concerning the attorney's fees, the compensation for attending the action, or the alleged damage to the credit of plaintiff below. Attorney's fees are not recoverable in an action of this kind where no malice or willful wrong is proved. If, upon a retrial, it shall appear from the facts that it cannot be reasonably inferred that the conduct of the sheriff was influenced by any improper motive, the jury must disregard all the evidence of the special damages heretofore referred to. Under the pretext of recovering actual damages, a party cannot recover exemplary or vindictive damages; that is, damages inflicted by way of penalty or punishment.

The case of *Tyler v. Safford*, 31 Kas. 608, to which we are referred, is not in point, because that was an action brought upon an attachment undertaking, and the measure of damages in such a case is different from one of this character. One purpose of the execution of the instrument was to secure Hulme and Negbaur harmless and free from all expenses, damages and costs connected with the signing of the redelivery bond; but another purpose in the execution of this instrument seems to have been to withdraw all the property of the mortgagors or assignors from the reach of their creditors. The liability of Hulme and Negbaur at most would be the amount of the debt owing to Buford & Co., by Baum & Baum, which was $1,900, and the interest and costs of the suit. (*Wolfley v. Rising*, 13 Kas. 535.) The goods assigned were of the value of $10,030.47.

The instrument conveyed all the personal property owned by Baum & Baum not exempt by law. Thereby Hulme & Negbaur were given the exclusive possession of all the goods and merchandise of Baum & Baum, and were authorized to proceed to sell them in such a manner as they might deem advisable for securing the most money therefor. They were empowered to conduct the business of the sale of the goods at the old stand of the firm, or at such other place as they might deem best for all concerned. It was also provided that the proceeds of the sale of the goods and all the goods remaining unsold were to be kept by Hulme & Negbaur until the case of Buford & Co. v. Baum & Baum was finally decided, and until all the costs and expenses of Hulme & Negbaur were fully settled. At the time of the execution of this instrument, Baum & Baum were indebted to various parties other than Buford & Co. It also appears in evidence that when Hulme removed the goods and merchandise from Baum's store to his own he scratched the letters (B. & B.) from many of the articles and mixed them with his own; that he did this to discourage and prevent the creditors of Baum & Baum from attempting to levy upon the goods; that when defendant below asked him to point out the Baum & Baum goods, he claimed to own them all.

Considering the terms of the instrument and the acts of the parties, it appears to us that the instrument was executed in part with the intention, participated in by both parties, to delay, hinder and defraud the creditors of Baum & Baum by tieing up the property of the latter firm for an indefinite time beyond the reach of their creditors. Therefore, in our opinion, it is fraudulent *in toto*, and cannot be supported to any extent as against such creditors. It cannot be supported even to the extent of securing Hulme & Negbaur for signing the redelivery bond executed by them. (Comp. Laws of 1879, ch. 43, § 2.)

In *Wallach v. Wylie*, 28 Kas. 138, we held that a chattel mortgage purporting to secure $7,920 of indebtedness, when there was in fact only $3,000 of such amount *bona fide,* was fraudulent as against the creditors and therefore void *in toto*.

So here. Although one object in making the written assignment was to indemnify the mortgagees or assignees against possible liability on a redelivery bond, yet as another and important object of the instrument, participated in by both parties, was to delay, hinder and defraud the creditors of the mortgagors or assignors, it is also fraudulent *in toto*.

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.