## J. W. HUGHES v. ELIAS SHULL.

CHATTEL MORTGAGE, *Not Fraudulent in toto.* Where a note and mortgage are executed for an amount in excess of the actual indebtedness existing from the mortgagor to the mortgagee, to take up an old note and mortgage given in good faith to secure an actual indebtedness, with the understanding that upon the execution of the new note all the credits that were upon the old note should be placed upon the new note, and such understanding was carried out by the mortgagee, and in the overstatement of the amount secured there was no intent of either party to hinder, delay or defraud the mortgagor's creditors, such mortgage is not fraudulent *in toto* because upon its face it secures an amount of indebtedness in excess of that actually existing from the mortgagor to the mortgagee.

### *Error from Shawnee District Court.*

ACTION brought by *Elias Shull* against *J. W. Hughes*, to recover the possession of certain goods and chattels consisting of saddles, harness, bridles, horse-collars, whips, etc., alleged to

be wrongfully detained by the defendant, and also for $770 damages. The petition, *inter alia*, alleged that on November 4, 1882, P. Q. Davis, being indebted to the plaintiff, executed and delivered to him a promissory note, of that date, for the sum of $1,000, due thirty days from date; that to secure the payment of the note, Davis executed to plaintiff a chattel mortgage on the goods and chattels in controversy, which was duly recorded November 8, 1882; that on December 6, 1882, plaintiff took possession of said goods and chattels by virtue of his chattel mortgage, and thereafter the defendant seized the same and wrongfully detained them from the plaintiff; that at the time plaintiff took possession of the goods, there was due him upon the note secured by the mortgage, $375. The defendant filed an answer containing a general denial. Trial, February 22, 1884, before the court and a jury. The jury returned a verdict for the plaintiff, assessing the value of the property seized by the defendant at $550, and that the value of the plaintiff's right of possession in the property was $498.80. The jury also returned the following special findings:

"Q. What amount was due plaintiff from Davis, when the note and mortgage upon which plaintiff relies to recover herein were executed? A. $500.

"Q. Was there any consideration for the residue of said note? A. None.

"Q. What was the value of the property attached by the defendant? A. $700.

"Q. What was the value of the property attached returned to Davis on his claim of exemption by the defendant Hughes? A. $150.

"Q. What amount did Davis owe plaintiff at the time the property was returned to Davis? A. $436, with interest from the time of attachment until returned."

On February 23, 1884, the defendant filed a motion for judgment in his favor upon the verdict. This was overruled by the court, the defendant excepting. Thereupon the defendant filed his motion for a new trial upon several grounds: among others, that the verdict was not sustained by the evidence; that the verdict was contrary to law; that errors of

law occurred on the trial.   This motion was overruled, the defendant excepting.   The court then rendered judgment that the plaintiff have and recover from the defendant the personal property described in the petition, or the value of the plaintiff's interest therein, the same being $422.10, in case the delivery of the property could not be had; and, also, his costs, taxed at $45.55.   The plaintiff remitted $76.70 from the amount returned by the jury in their verdict as his interest in the property levied upon, and hence judgment was rendered for $422.10 instead of $498.80, as returned by the jury.   The defendant excepted, and brings the case here.

*Linus S. Webb,* and *D. E. Sowers,* for plaintiff in error.

*Robert A. Friedrich,* and *John T. Bradley,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.:  In this case, the defendant in error — plaintiff below — claimed in the district court that he was the owner and entitled to the immediate possession of certain personal property described in his petition, consisting of saddles, harness, bridles, whips, curry-combs, etc., by virtue of a chattel mortgage executed to him by P. Q. Davis, dated November 4, 1882, and duly filed in the office of the register of deeds of Shawnee county, November 8, 1882.   Upon its face, the chattel mortgage purported to secure the payment of a promissory note of the same date of the mortgage, for the sum of one thousand dollars, executed to plaintiff below by Davis, payable thirty days from date.   Plaintiff claimed that at the commencement of the action there was due and unpaid on the promissory note $443.75; that after the note became due, by an agreement between himself and Davis, the property in the mortgage was turned over to him by Davis, and thereupon he made an agreement with Davis, by which the latter was to remain in possession of the goods, as agent of the former, with authority to sell and dispose of the same in the ordinary course of business; to receive pay therefor, and account to the plain-

9 — 33 KAS.

tiff below, daily, for all sales made—the accounting to be each evening after the close of the business of the day; that in pursuance of this agreement, Davis continued to sell the goods from time to time, until the 13th of December, 1882, each day accounting to plaintiff below for the property sold; that on said December 13th, the defendant, who was then acting as constable in the city of Topeka, by virtue of certain attachments placed in his hands against the property of P. Q. Davis, levied upon and took possession of the mortgaged property; that he has since sold and disposed of it; that plaintiff below made a demand for the property upon the defendant, before the commencement of the action, and that the defendant refused to deliver it to him. Plaintiff in error, defendant below, claimed that the note and mortgage of November 4, 1882, were executed with intent to defraud, hinder and delay the creditors of Davis in the collection of their debts against him.

The transaction between the parties was substantially this: about May 2, 1882, Davis was indebted to H. A. Lewis in the sum of one thousand dollars, for money received, and on that day he executed and delivered to Mrs. Clara Lewis, the wife of H. A. Lewis, his promissory note for $1,000, payable thirty days from date. At the same time, Davis executed to Mrs. Lewis a chattel mortgage on the property in controversy to secure the payment of the note. While Mrs. Lewis held this note and chattel mortgage, she received, as payment to apply on the same, from Davis, about $550. She afterward transferred and indorsed the note to plaintiff below, there being, at the time, over $450 of principal and interest due upon the note. After the transfer and assignment of the note to plaintiff below, and on November 4, 1882, Davis took up his original note and mortgage, and on that day executed to plaintiff below the note of $1,000 and the mortgage to secure the same on the property in controversy. In referring to the second chattel mortgage, the district court charged the jury:

"Now, with regard to the mortgage executed and delivered to Shull by Davis on November 4, 1882, if you find from the evidence that the actual indebtedness for which the mortgage

was given as security was only $450, and that in fact the mortgage was given to secure a note of $1,000, and if you further find from the evidence that $650 of the amount mentioned in the mortgage was for a fictitious or imaginary debt that did not exist, and was not an actual existing debt from Davis to Shull, then I instruct you that *prima facie* the mortgage would be fraudulent and void as against the subsequent attaching creditors of P. Q. Davis; and without explanation or further proof respecting the transaction between the parties, the defendant would be entitled to judgment, and the burden of proof is upon the plaintiff to show that in fact the transaction was honest, and a *bona fide* transaction, and not designed or intended by the parties—Davis and Shull—to cheat, defraud, hinder or delay the creditors of P. Q. Davis in the collection of their debts. As I have stated to you before, the execution and delivery of the mortgage, under the circumstances I have suggested, would be *prima facie* evidence of such fraudulent intent, and the burden of showing the *bona fides* or good faith of the transaction, under such circumstances, will rest upon the plaintiff in this suit."

The court further instructed the jury as follows:

"Now, with respect to the transaction of the delivery of the mortgaged property by Davis to Shull, I instruct you that so far as that transaction is concerned, if the mortgage transaction was *bona fide* and a lawful one, and that after the debt became due and before the levy of the attachments Davis in good faith surrendered and delivered the property to Shull for the purpose of paying and satisfying this indebtedness, and to be used by Shull for that purpose, and that in pursuance of such delivery it was further agreed between Shull and Davis that Davis should remain in possession of the goods as agent for Shull, with power to continue to sell and dispose of them in the ordinary course of business for the benefit of Shull, and with the understanding and agreement that the money derived from sales of the goods should be paid directly to Shull, and that this transaction before the attachment proceedings was carried out in good faith and not for any fraudulent purpose, that such transaction was legitimate and proper, and the possession of Davis of the property, under such circumstances, would be the possession of Shull himself."

Complaint is made of these instructions, and it is contended as it was shown upon the trial that there was due to plaintiff

below from P. Q. Davis, only the sum of $450 or $500 at the time the note and mortgage of $1,000 of November 4, 1882, were executed, that fraud was thereby sufficiently shown, and the jury should have been instructed to find for defendant below. In support thereof, it is said that every person is presumed to have intended the natural and probable consequences of his own acts, and *Wallach v. Wylie*, 28 Kas. 152, is cited as conclusive that the mortgage of November 4, 1882, was fraudulent and void. The court did instruct the jury that *prima facie* the mortgage was fraudulent and void as against the subsequent attaching creditors of Davis, but permitted the jury to pass upon the *bona fides* of the transaction of the parties. This was proper, and therefore the instructions declared the law. (*Frankhouser v. Ellett*, 22 Kas. 127.)

The jury, by their verdict, found that the parties acted in good faith, and that there was no fraud committed or intended. In *Wallach v. Wylie*, supra, the chattel mortgage was held void *in toto*, because of the intention, participated in by all the parties to it to hinder, delay and defraud the mortgagor's creditors. (Comp. Laws of 1879, ch. 43, § 2.) In this case, the overstatement of the amount secured by the chattel mortgage was not made with the fraudulent intent to hinder, delay and defraud the creditors of Davis. In this respect the case differs from *Winstead v. Hulme*, 32 Kas. 568. When the original note and mortgage were executed by Davis to Mrs. Lewis, the note was evidence of an actual existing indebtedness, and the chattel mortgage secured an actual existing indebtedness. When the remainder upon that note became past due, plaintiff below requested Colonel Lewis to have Davis execute a new note and mortgage. Lewis went to Davis, and the latter executed to plaintiff below a new note and mortgage of the same amount as the old note, the mortgage being upon the same goods. There was evidence introduced upon the trial tending to show that the second note and mortgage were executed for the amount of the old note and mortgage, because at the time, neither Lewis nor Davis had the old note, and did not have with them a list of the credits or dates of the credits upon the old note; and

when the new note and mortgage were executed, it was with the express understanding that the plaintiff below should place all the credits that were upon the old note, upon the new note. Lewis communicated this understanding to plaintiff below when he delivered the new note and mortgage, and plaintiff below immediately placed all the proper credits upon the new note. Subsequently plaintiff below took possession of the mortgaged property, and was in possession of the same when the levies were made thereon.

· We have examined the other alleged errors, but on account of the special findings of the jury, it is unnecessary to refer particularly to them.

The judgment of the district court will be affirmed.

All the Justices concurring.