T. B. BOWLING, *as Sheriff of Wyandotte County*, v. THE ARMOURDALE BANK *et al.*

No. 8687.

1. CHATTEL MORTGAGE— *Question for Jury —Fraud.* A creditor of a failing debtor, learning that attachments were about to be levied on a stock of merchandise of the debtor, obtained a mortgage on the stock to secure the payment of a *bona fide* debt that had been owing for considerable time. It was then suggested that the debtor had borrowed money from the creditor's bank during the day, the exact amount of which was unknown, and the parties being some distance away from the bank and store could not easily ascertain the amount which had been borrowed. It was agreed that the amount should be fixed at $1,000, and it was further stipulated, that if there should be any excess it might be applied to the payment of attorneys' fees for foreclosing the mortgages, and a note and mortgage for that amount were then made and delivered. The amount borrowed during the day was in fact $500, and it was returned to the creditor on the evening of that day. *Held*, that, in a controversy with other creditors, the question whether both the mortgages were parts of the same transaction so that infirmities in one mortgage vitiated both was one of fact for the determination of the jury; and *held*, further, that the taking of a second and separate mortgage, even if invalid, does not necessarily defeat the first mortgage, if taken in good faith, and without intent to hinder, delay or defraud other creditors in the collection of their debts.

2. ——— *Excessive Security —Evidence.* The fact that the amount of money named in the second mortgage was greater than the actual indebtedness may be received in evidence as tending to show bad faith, but it is not conclusive, and, like other circumstances connected with the transaction, was properly submitted to the jury upon the question of the good faith and honesty of purpose of the parties.

*Error from Wyandotte District Court.*

*Hon. B. E Johnston, Judge pro tem.*

AFFIRMED.                         OPINION FILED JULY 11, 1896.

*Van Syckel & Littick, Anderson & Henderson, Leon Block,* and *Hutchings & Keplinger,* for plaintiff in error.

*Morse v. Morse,* for defendant in error, The Armourdale Bank.

The opinion of the court was delivered by

JOHNSTON, J.: This is a controversy between a mortgagee and attaching creditors. M. V. Ingram, a merchant at Kansas City, borrowed money from time to time from the Armourdale Bank for the purpose of carrying on his business, and on the morning of November 18, 1890, he was indebted upon a note held by the bank in the sum of $2,000. He had purchased goods upon credit, and upon the day named the creditors were pressing him for the payment of their claims, and had taken the preliminary steps for an attachment of his stock of goods. The cashier of the bank, upon learning of the situation, hastened to obtain security. A mortgage was made by Ingram upon the stock of goods to secure the $2,000 note, and upon the suggestion that an additional amount of money had been obtained on the afternoon of the same day — the exact amount of which was not then known to the parties present — a note and mortgage for $1,000 were executed for the purpose of securing this indebtedness, and it was understood at the same time that the excess, if any, should stand as security for any expense that there might be connected with litigation or the foreclosure of the $2,000 mortgage. The mortgages so executed

were taken at once to the office of the register of deeds and filed for record. Having filed the mortgages, the cashier obtained possession of the stock of goods, locked up the store, and placed a notice upon the door that the stock had been taken and was held under the mortgages. A few hours later the attachments sued out by the creditors were served, and the sheriff opened the doors and gained possession of the property. The bank immediately commenced an action of replevin to recover the goods from the sheriff, claiming a special ownership in them by reason of both mortgages. When the goods were attached they were appraised at $7,161.97, and after the bank recovered possession the goods were sold at a public sale for $7,000.

The validity of the $2,000 mortgage is conceded, but the attaching creditors claim that the $1,000 mortgage was made without consideration, for the purpose of delaying and defrauding creditors; that both constituted one transaction, and therefore that the fraud committed as to the $1,000 mortgage tainted the whole transaction and vitiated both mortgages. To enforce this view, an instruction was asked that under the evidence the execution of the two mortgages constituted parts of one and the same transaction, and its refusal is the principal error assigned.

Upon the testimony, the jury found that the two mortgages did not constitute a single transaction, and further, that the taking of the second mortgage was not for the purpose of delaying or defrauding other creditors of Ingram in the collection of their debts. Under the testimony, the court ruled correctly in refusing to instruct the jury that both mortgages should be treated as parts of the same transaction. The $2,000 mortgage was first made and delivered. It se-

cured an old debt, the amount of which was definite and well known to both parties. Afterward, Quarles, the cashier of the bank, reminded Ingram that the manager of the Armourdale store had obtained money from the bank during the day, and requested security for its payment. Ingram consented, and as the Armourdale store and bank were a considerable distance away from the place where the mortgages were being executed, and as the amount of the debt was not known to either party, it was fixed at $1,000, and a note and mortgage for that amount were executed. Before Quarles left the bank to obtain the security he learned that the creditors of Ingram were pressing for payment and that attachment suits against his property were in contemplation. Knowing that the manager of the Armourdale store had drawn money from the bank on that day, he directed one of his clerks to proceed to the store and endeavor to obtain a return of the money. The manager of the store had been allowed to overdraw Ingram's account at the bank in amounts ranging from $500 to $3,000 in currency, for the purpose of cashing the checks of employees in the packing-houses, shops, and manufacturing concerns. The money was drawn upon pay-checks for the purpose of accommodating the customers of the store, and the usual plan was to turn in the cash checks to the bank on the following day in exchange for the overdraft checks upon the bank. Five hundred dollars had been obtained for that purpose upon the day in question, but Quarles was not informed as to the amount of the overdraft nor did he know whether or not the money had been returned when the $1,000 mortgage was made. It does not appear from the record just when the money was returned, or whether it was before or after the making

12—57 KAN.

of the mortgage. Although the $1,000 note was ante-dated, the testimony tends to show that the bank acted in good faith in taking the note and mortgage. Nothing indicates a purpose to magnify the debt with a view to mislead or stand off other creditors, and no attempt was made to conceal the real nature of the debt or the purpose for which the mortgage was given. While the replevin action was based on both mortgages, the officers of the bank openly stated the facts in regard to the $1,000 note, and shortly afterward, in a garnishment proceeding, answered that the indebtedness represented by the $1,000 note and mortgage had been discharged and no claim was made upon them.

Whether both mortgages were a part of a single transaction was clearly a question of fact for the determination of the jury. One was for a debt of long standing and of a definite amount, and was executed and delivered before it was determined between the parties what security should be taken for the overdrafts of that day. Although the cashier intended to protect the bank by security or otherwise, and although the mortgages were proximately executed, they were so far distinct and independent of each other as to leave it an open question for the jury whether they should be treated as parts of the same transaction. The testimony sustains the finding made by the jury, and it having been determined that they did not constitute one transaction, there is but little left in the case for consideration.

The $2,000 claim was a *bona fide* debt. It was competent for Ingram to give a preference and to secure the bank by a mortgage upon his merchandize. The mortgage was taken in good faith, and being a separate, valid transaction entitled the bank to the possession of the mortgaged goods. The payment of that

debt is all that is claimed by the bank, and the balance remains for distribution among other creditors.

The taking of a second and separate mortgage, even if fraudulent, would not defeat the right of possession under the first. As we have seen, however, the testimony does not compel the conclusion that there was bad faith or fraudulent intent in taking the second mortgage. There was an actual indebtedness of $500, and the circumstances explain the necessity for haste and the reasons why the parties did not definitely ascertain the amount of the debt. The fact that the amount of money named in the mortgage is greater than the actual indebtedness may be received as tending to show bad faith, but it is not conclusive, and may be explained consistently with good faith in the mortgagee. Nor is the antedating of the note conclusive evidence of fraud, but, like other circumstances connected with the transaction, is to be submitted to the jury upon the question of the good faith and honesty of purpose of the parties. (*Hughes v. Shull,* 33 Kan. 127; *Bush v. T. G. Bush & Co.,* 38 id. 556; *Allen v. Fuget,* 42 id. 672.) The idea of Quarles, that part of the $1,000 mortgage should stand as security for expenses, including attorneys' fees, in protecting and foreclosing the mortgages taken, was wrong; but he testified, and the jury have believed his testimony, that he entertained the honest belief that such expenses might be allowed. The main purpose of the mortgage, however, was to secure the payment of an existing *bona fide* indebtedness, the exact amount of which was uncertain; and the fact that a part of the debt secured is invalid does not necessarily avoid the mortgage. The erroneous notion of the parties concerning the right to secure attorneys' fees, among

other expenses, did not operate to the prejudice of the other creditors of Ingram. (*Rathbone v. Boyd*, 30 Kan. 485.).

What has been said disposes of the material objections to the rulings of the court in charging the jury. All of the questions raised upon the instructions have been considered by the court, and in them we find no prejudicial error or anything which calls for further comment. The verdict appears to be sustained by the testimony, and we do not regard the objections to the special findings to be important.

The judgment of the district court will be affirmed.

All the Justices concurring.