E. S. GULLY, use, &c., *vs.* SAMUEL DUNLAP et al.

A guardian's trust is one of obligation and duty, and not of speculation and profit; and he cannot reap any benefit from the use of his ward's money in any contract or sale.

Without an order of the probate court for that purpose, a guardian has no power to convert the personal estate of the infant into land, or to buy land with the infant's money. *Held,* that, if he does so, the infant, on arriving at age, has his election to take the land or the money; and if a guardian uses the ward's money in trade, the ward is equally entitled to elect to take the profits of the trade, or the principal-money, with compound interest.

The statute of this State (Hutch. Code, 678, § 1,) provides that the probate court, on the application of the guardian, may direct him to purchase real estate or slaves out of the surplus funds of the estate in charge, should the court think the ward's interest would be promoted in such purchase.

The power which this act conferred upon guardians was only such as they could have formerly exercised by virtue of a court of chancery, and does not change the obligations of guardians, or the relative rights of wards. *Held,* that the rights of wards, in relation to property purchased with their money by guardians, without an order of the probate court authorizing it, remain precisely the same they were before the statute was passed.

This statute was not intended to introduce any new rule on the subject, but merely to designate and point out the tribunal to which the guardian might apply, in order that the ward, on arriving at age, could claim nothing but the property, and relieve the guardian from responsibility to the ward beyond the purchase.

*Davis* v. *Harris,* 13 S. & M. 9, cited and explained by the court, and declared not applicable to this case.

If an infant bring suit, his infancy must be pleaded in abatement, and cannot be insisted on after the defendant pleads in chief; and it has been held in some cases, even if the infancy of the plaintiff has been pleaded in abatement, that the court might amend by inserting a *prochein ami.*

IN error from the circuit court of Kemper county; Hon. John Watts, judge.

The facts are contained in the opinion of the court.

*Byrum Garnagen,* for plaintiff in error, cited 1 N. Y. Dig. 2; 7 Johns. R. 393; 1 Cow. 33 (note b); 8 Pick. 552; 15 Wend. 631; 3 Kinn. L. Comp. 195, 196; 1 Bailey, C. R. 223.

*Guion & Baine,* for defendants in error, cited 5 Johns. C. R. 29.

Gully *v.* Dunlap et al.

*D. C. Glenn,* on the same side, contended the decision of the court below was correct, and cited *Garland* v. *Jacobs,* 2 Leigh, 651, and cases cited in the decision.

Mr. Justice YERGER delivered the opinion of the court.

This action was brought to recover on an indemnifying bond given to the sheriff of Kemper county, on account of the levy and sale of a slave named Henry, levied upon as the property of James B. Wall, by virtue of an execution against him.

The action was brought for the use of James and Robert Wall, of whom James B. Wall was guardian, and to whom, and not to James B. Wall, it is averred, the slave belonged.

The proof in the record very clearly establishes, that James B. Wall, the guardian, having some money of his wards in his hands, purchased with it, in the name of the wards, to whom a bill of sale was also made, a slave by the name of Dick; and that subsequently Dick was exchanged by him for the slave Henry, a bill of sale for Henry being likewise made to the wards.

There seems to be no question from the proof, that the money with which Dick was bought belonged to the wards, and that he was exchanged for Henry in their name and for their use.   Under this state of proof, we are at a loss to conceive any principle of law or equity which would justify the creditors of the guardian in subjecting the slave to the payment of the guardian's debts.

We have always considered the rule of law to be well settled, that a guardian's trust is one of obligation and duty, and not of speculation and profit.   He cannot reap any benefit from the use of the ward's money, nor act for his own benefit in any contract or purchase or sale as to the subject of the trust. Without an order of the court for that purpose, he has no power to convert the personal estate of the infant into land, or to buy land with the infant's money.   If he does so, the infant, on arriving at age, has his election to take the land or the money.   If the guardian uses the ward's money in trade, the ward is equally entitled to elect to take the profits of the trade,

or the principal money, with compound interest. 2 Kent, Com. 229, 230.

In this State, the statute law has provided, that the probate courts, on the application of the guardian, may direct the guardian to purchase real estate or slaves out of the surplus funds of the estate in his charge, provided the court be of opinion that it would promote the interest of the ward. Hutch. Dig. 678, art. 13, § 1.

The power which this law conferred upon guardians was only such as they could have formerly exercised by direction of a court of chancery. We do not conceive that it made any alteration in the relative rights and obligations of the guardian and wards, but simply conferred upon the probate court that jurisdiction on this subject which formerly could only be exercised by a court of chancery. We have no doubt that the rights of the ward, in relation to property purchased with his money by his guardian, without an order of the probate court authorizing it, remain precisely the same — unchanged and unaltered — that they were before the statute was passed.

In our opinion, the statute was not intended to introduce any new rule on the subject, but merely to designate and point out the tribunal to which the guardian might apply, in order that the ward, on arriving at age, could claim nothing but the property; and in this way the guardian be relieved from the right of election, which the ward otherwise would have, either to claim the property, or refusing it, to compel the guardian to account for the money and interest used in purchasing it.

Our attention has been called to the case of *Davis* v. *Harris*, 13 S. & M. 9, where it is supposed that the court held a different rule, and established the doctrine, that a ward has no title to property purchased by the guardian, without an order of the court, in the name and with the money of the ward; and that the property so purchased became thereby the property of the guardian, and subject to his debts. We may remark, in relation to the case of *Davis* v. *Harris*, that the evidence went very far to show, that the claim of the ward was fraudulently made, to enable the guardian to protect his own property, under color

of the ward's title, from the guardian's creditors; and in this view of the facts of the case, the judgment of the court seems to be correct.

It is true there were some expressions used in the opinion of the court which might seem to countenance the doctrine, that the ward cannot claim property purchased with his money and in his name by the guardian, unless the guardian had obtained a previous order of the court authorizing it. But, we are not willing to suppose that the court intended to lay down the rule so broadly. Such a doctrine would materially impair the rights of minors, and would, in many instances, lead to the grossest injustice and wrong; and so far from having the effect of compelling guardians to a more strict observance and execution of the trusts imposed upon them, it would encourage a disregard and violation of these trusts. We are not willing, therefore, to give so broad a construction to the language of the court.

It may not be improper to remark, that if the opinion of the court in the case referred to established the doctrine which it is supposed to countenance, it would, in our opinion, conflict with a long, uniform, and well settled train of decisions, touching the relative rights and duties of guardian and ward; a train of decisions based upon principles of the soundest policy, and tending essentially to the preservation and protection of the rights and property of minors; and, therefore, under such circumstances, as it would stand a single isolated case, of recent decision, in conflict both with precedent and principle, and under which no important rights could, in any likelihood, have arisen, we would feel constrained to overrule it.

We think, according to the proof in the record before us, that the slave Henry was the property of James and Robert Wall, and was not subject to execution as the property of James B. Wall.

It is insisted that this action cannot be maintained for the use of the parties suing, because one of them was a minor when the suit was instituted.

On this point the rule is well settled, that if an infant sue, his infancy must be pleaded in abatement. It cannot be insisted

upon after the defendant pleads in chief.   1 Chitty on Pl. 436 ; 7 Johns. 373; 1 Cow. 33.   Even if the infancy of the plaintiff had been pleaded in abatement, it has been ruled in some cases, that the court might amend by inserting a *prochein ami.*   8 Pick. R. 553.

Let the judgment be reversed, and a new trial awarded.