WILLIAM B. GERE, Appellant, vs. WILLIAM P. MURRAY, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

In cases of voluntary assignments, an unlawful intent appearing on the face of the instrument, vitiates the conveyance. Where the language or provisions of the instrument betray the intent, the proof is deemed conclusive and there is nothing to submit to a jury. Where such is not the case, and the jury find the intent from extrinsic evidence, the result is equally fatal to the validity of the conveyance. ' The question of fraudulent intent is a mixed question of law and fact: that is, the question of the existence of a certain intent is a question of fact for the jury, (when not disclosed by the papers,) and for the Court to declare whether such intent be fraudulent or otherwise. The fact that the assignee had no knowledge of the fraudulent intent cannot cure the fraud of the assignor. The assignee of an insolvent, accepting the trust, is not a purchaser for a valuable consideration. So, if the jury find that the intent of the assignors at the time of the assignment, was to prevent a forced sale of their property, in order that the business might be continued and the goods sold at retail, the Court should have charged that the deed was void.

This was an action brought to recover personal property, to which the Plaintiff acquired the right and possession by a general assignment from Connor & Son, to the Plaintiff in trust and for the benefit of their creditors. The complaint alleges the assignment, and the possession of the property by the Plaintiff under the assignment before and at the time of the alleged taking, the value of the property, that the Defendant wrongfully took and detained the same from the possession of the Plaintiff, and refused to deliver, &c., although often requested by the Plaintiff, demands judgment for a

return of the property and damages for the taking and detention, &c.

The answer denies, and puts in issue the allegations of the complaint, and alleges that the assignment was void as to the creditors of the assignors, and that the Defendant took the property as United States Marshal upon an execution in favor of a judgment creditor ; a verdict was rendered for the Plaintiff, 'and a motion made for a new trial and in arrest of judgment ; the motion was denied by the Court below, and the Defendant appeals from that order.

Points and Authorities for Appellant.

The Court erred in refusing to charge the jury as requested by Defendant, "that the assignee had no right to carry on the business at retail, and that if it was so intended by the assignors at the time of the assignment, it is void ; and in charging that such an intent would only be strongly indicative of fraud, but the question would be for them to decide." *Case*, *p.* 20, *line* 1. And also in refusing to charge, " that if the intent of the assignors at the time of the assignment was to prevent a forced sale of their property, and in order that the business might be carried on and the goods sold at retail, .the deed is void ;" and charging that it was a question for the jury, and that such an intent, if so found, would be strongly indicative of fraud.

The Court virtually charged on these two requests, that two questions were before the jury—one as to the existence of a certain intent in the minds of the assignors at the time of the assignment ; the other as to whether that intent was a fraudulent one. The Defendant desired the question to be left to the jury as to whether those intents did exist; but if the jury should find that the intent did exist, he then claimed it was a question of law as to whether such an intent was a fraudulent one. The Court below in its opinion on the motion for a new trial, says : " The question for the jury was not simply whether any particular intent existed at the time of the assignment, but whether in view of all the circumstances before them, that intent was a fraudulent one." And then goes on

to say that it must also appear that the assignee knew of the intent, and co-operated in it.

We think the learned Judge here has clearly erred. The knowledge or co-operation of the assignee had nothing to do with the case. The statute declares that the intent to hinder, delay, or defraud creditors makes the assignment void. *Comp. Stat.*, 459, *ch.* 51, *sec.* 5, "that the title of a purchaser for a valuable consideration shall not be affected unless he had notice of the fraudulent intent of his immediate grantor, or of the fraud, &c." Thus all that is requisite to avoid a sale to a purchaser for a valuable consideration, is a mere knowledge of the fraudulent intent of the grantor—not that he should coincide or co-operate in carrying it out; but simply that he should know that the intent of his vendor in making the sale was to hinder, delay, or defraud his creditors.

It is the simple intent on the part of the grantor, not its accomplishment or success, or its failure. These assignors may have intended to defraud, and yet the assignee might have prevented their carrying out their intent. The assignment is nevertheless void, for the good faith of the assignee cannot counterbalance the bad faith of the assignors.

The assignee in this case was not a purchaser for a valuable consideration, and so not entitled to protection under *sec.* 5. *Burrell on Assignments, page* 484; *Haggerty vs. Parmer*, 6 *Johns. Ch.*, 437; *Slade vs. Van Vechten*, 11 *Paige*, 21.

And consequently, if the assignment was made with an intent to hinder, delay, or defraud on the part of the assignors, it is void, and the Judge in the Court below actually so charged. *Case, p.* 19, *lines* 13 *to* 16.

It would be difficult to reconcile that part of the Judge's charge with his opinion on this motion.

Conceding, then, that it is not necessary that the assignee should be a party to, or cognizant of, the fraudulent intent on the part of the assignors, let us examine the question whether what is a fraudulent intent is a question for the Court or jury:

The history of this statute, copied as it is from New York, is well known. See 2*d N. Y. Rev. Stat.*, 4*th Ed.*, 320. It was passed to settle the law in a certain "class of cases, by which the acts of parties were pronounced fraudulent and

void in law as against creditors, in the absence of any fraud-ulent intent, and under a concession by the Court that there was none." "Such is the effect of the note of the revisors in this section." *Cunningham vs. Freeborn*, 11 *Wend.*, 253. "But," says Mr. Justice Nelson, in the opinion in that case, "I apprehend that if there is any provision in the assignment, or any fact admitted in the answer, (the answer in Chancery being evidence, and of course being like any other evidence,) which is *per se* fraudulent according to the law of the case, it is so, the denial of the fraudulent intent to the contrary not-withstanding. That any set of facts, or any intention to be fraudulent, must be a violation of some principle of law since the revised statutes, as well as before, and when the violation of the principle is shown, the intent is the natural and neces-sary consequence, and the denial of it is senseless and idle."

So we claim to apply that same law to this case ; and if making an assignment "with the intention of having the busi-ness carried on at retail, and for the purpose of preventing a forced sale of the property, and in order that this business might be continued and the goods sold at retail," is a violation of some principle of law, then we claim that it is equally "idle and senseless " to find the fact of such an intent, and at the same time find such an intent not a fraudulent one.

It is for the law and court to decide what intent is legal and proper, and what illegal and fraudulent. It is for the jury to decide what intent exists ; that intent once found, the Court must characterize it.

Because if the jury is to judge what is a fraudulent intent in one case, they must in all, and if the evidence showed an intention on the part of the assignor not to deliver the prop-erty, but to retain it to support his family, it would be equally competent for them to declare such an intention not fraudu-lent, because his family needed it. The question of fraudulent intent, says Judge Nelson, is a " mixed question of law and fact. That is, it is for the Court to declare and charge what is a fraudulent intent, and for the jury to find as to whether that intent exists.

Suppose this precise intent which is embodied in the in-structions asked for, had been apparent on the instrument of

assignment, would it not have been fraudulent on its face ?
Would not the Court have charged that such an intent was
illegal, and that it appearing on the face of the instrument,
the evidence of the existence of such an intent was conclu-
sive, and the verdict must be for the Defendant ?

And is there any difference between the intent appearing
on the face of the instrument, and the same intent being
shown *aliunde*, except in the character and conclusiveness of
the evidence produced to prove it ?

To refer to some cases on this point.   In *Griswold vs. Shel-
don et al.*, 4 *Comstock*, 581, it was held that a chattel mortgage
that on its face permitted the mortgagor to retain possession
of the goods, and as circumstances showed, a further agree-
ment that the mortgagor should sell and dispose of them as
his own, was fraudulent in law—or in other words, the facts
necessarily showed an intent which the law adjudged a fraud-
ulent intent.   In *Ecgill vs. Hart*, 5 *Selden*, 213, it was again
decided that a chattel mortgage allowing the mortgagor to
to retain possession and to sell, though not on credit, was
fraudulent.   In *Ford et al. vs. Williams*, 3 *Kernan*, 577, the
same principle was sustained ; and in *Gardner vs. McEwen*, 19
*N. Y. Rep.*, 123, that a mortgage " lawful upon its face, duly
filed and proved to be given for an honest debt, is void as to
creditors if given under an agreement that the mortgagor
might continue the business of buying and selling the goods,"
&c., Denio, J., holding "that the Defendant was entitled to
have the jury instructed that if they found such an agreement
existed they must find for the Defendant"—*page* 126.

Thus it seems from these cases that the execution of a chat-
tel mortgage with the intention that the mortgagor shall retain
and dispose of the goods, is a "violation of a principle of law,"
and that when that intention appears on the face of the in-
strument, it is conclusive evidence of such intent, and the in-
strument is held void by the Court, or the jury instructed to
so find it void.   When such an intent is shown *aliunde*, it is
the duty of the Court to declare such an intent a " violation
of a principle of law," and if the jury find such an intent to
have existed, to find against the instrument.

Thus there is really no such thing as fraud in law and fraud

in fact. Fraud is one and the same ; the difference is in the evidence of it. It simply amounts to this, that an instrument which bears on its face the violation of some principle of law, furnishes conclusive evidence of its own invalidity, and has been called fraudulent in law in contradistinction to cases where the evidence of the violation of such principle has appeared *aliunde*. In either case the law decides what may and what may not be done, what intent is lawful and what not; and the jury must decide whether the principles of law as expounded to them, have been violated or not.

It can hardly be necessary to argue that if the assignors had incorporated into their assignment, clauses stating " that the assignee should carry on the business at retail, and that he should make no forced sale, but that the business should be continued and the goods sold at retail," the deed would be void. We claim that we were entitled to go to the jury upon the question whether we had not shown such an intention on the part of the assignors outside of the instrument, and that if the jury believed that we had shown such an intention, we were entitled to a verdict.

If under the assignment as it is the assignee had carried out such an intention, he would have been guilty of a breach of trust. *Hart vs. Crane*, 7 *Pa.ge*, 37.

And certainly an act that would be a breach of trust on the part of the assignee, if intended by the assignor at the time of the assignment, would be a fraudulent intent. *Hart vs. Crane*, 7 *Paige*, 37; 18 *N. Y.*, 497.

Points and Authorities for Respondents.

The *sixth* and *seventh* instructions asked by the Defendant's counsel, and which the Court refused to give in the terms asked, we propose to consider together.

Sixth. " That the assignee had no right to carry on the business at retail, and that if it was so intended by the assignors at the time of the assignment, it is void."

Upon which "the Court charged that the assignee had no right to carry on the business at retail, and that if it were so intended by the assignors, such intent would be strongly in-

dicative of fraud, but that the question would be for the jury to decide."

SEVENTH. "That if the intent of the assignors at the time of the assignment was to prevent a forced sale of their property in order that the business might be continued and the goods sold at retail, the deed is void."

Upon which the Court charged "that it was a question for the jury, and that such intent, if so found, would be strongly indicative of fraud."

The view of the counsel and these instructions, were clearly based upon the decisions of the Supreme Court of the State of New York, which created the necessity of that provision of statute from which ours is copied, making "the question of fraudulent intent in all cases a question of fact, and not of law." See *Comp. Stat.*, sec. 4, *p.* 459.

The requests are, that the Court will submit to the jury and direct them to find only whether the assignors intended that certain acts or things should transpire after making the assignment, whether the intent existed, to have the business carried on at retail. Whether they intended to prevent a forced sale, and if so, then the Court should decide that such intent was fraudulent *per se*, not submitting the question of fraudulent intent to the jury, but submitting to them the question only whether an intent existed that certain things should be done, which if done, would be evidence of a fraudulent intent, and, asking the Court to determine that the fraudulent intent did exist as a matter of law.

Suppose the jury had found that the assignors did intend to prevent an immediate forced sale of the property, and intended that the goods should be sold at retail, is such finding anything more than evidence of the fraudulent intent. Strong evidence, perhaps, but not conclusive; it may be explained by other evidence equally strong and satisfactory to the jury to show that no fraudulent intent, in fact, existed; and that is the very question for the jury (not the Court) to determine.

Nearly every assignor in embarrassed circumstances, who makes an assignment in good faith for the benefit of his creditors, may fairly be presumed to intend to prevent the sacrifice of his property by an immediate forced sale on execu-

tions, because it is for the benefit of his general creditors that he should do so ; such is the ordinary effect and consequence of all general assignments, which must necessarily produce more or less delay in the application and distribution of the debtor's property to the payment of his debts.

And the time and manner of disposing of the property, most advantageously to the creditors, whether at wholesale or retail, whether in large or small quantities, must always depend much upon the kind, character and availability of the property, and must necessarily rest to a reasonable extent in the discretion of the assignee. *See Burrill on Assignments*, *pp.* 104, 185-6; 11 *Wend.*, 253-4; *Cunningham vs. Freeborn*, 2 *Conn.*, 633; *Deforest vs. Bacon*, 13 *Ib.*, 383; 12 *Pick.*, 451;

The property in this case, as the evidence shows, consisted chiefly in patterns or piece goods, trimmings, &c , such as are usually kept in a Tailor's furnishing store, designed to be made up and sold to the orders of customers—the amount was not large—and that was the most available and advantageous mode of disposing of them for the interest of the creditors, and there is nothing in the evidence tending to show that the time required to dispose of them in that way, was unreasonable, or that the assignors intended that the manner of selling the goods should produce any unnecessary delay in the performance of the trust.

All these facts were in evidence before the jury, and were proper for them to consider in determining the question of fraudulent intent.

And, although the assignors might have intended that a large portion of the goods should be sold at retail, and the business of manufacturing them, carried on for that purpose, yet, if the jury were satisfied from the evidence in the case that such was the most advantageous mode of disposing of the goods for the benefit and interest of the creditors, and the assignors were acting in good faith toward their creditors, the instructions asked would have been clearly erroneous. Under such instructions of the Court they would be compelled to find a fraudulent intent. When in fact they were satisfied from the evidence that no fraudulent intent existed.

It is for the Court to instruct the jury what the evidences

of fraudulent intent are—what the indications and badges of fraud are—and for the jury to find whether that fraudulent intent exists or not.

And this principle is asserted in the case of *Cunningham vs. Freeborn*, 11 *Wend.*, *p.* 254, cited by Appellant's counsel.

Justice Nelson says: "The idea that the assignment was a mere private arrangement by the debtor for his own benefit, and that the assignee is a trustee for him; the omission of schedules at the time of the assignment; the fact that the trustee had paid none of the debts at the time of his answer; the manner in which he had conducted the establishment, these and all other like facts are not *per se* fraudulent. These are grounds, and some of them very strong, from which to raise such a presumption, but all are subject to explanation."

In that case the assigned property consisted of an iron foundry, machinery, steamboat, wares and material wrought and unwrought, and the assignment contained an express provision that the assignee should continue to use and operate the establishment, as it had been before the assignment, to work up and manufacture the materials and sell them, &c., yet the assignment was held good.

In the case at bar the questions do not arise upon the face of the assignment, but upon evidence *aliunde* upon which it is attacked.

The assignment is admitted valid upon its face, and the Defendant attacks it as fraudulent upon other evidence.

If the assignment contained provisions which were fraudulent in law upon its face, then the question of intent might be determined by the Court without the aid of other evidence, and such are the cases cited by the Appellant. *4th Coms., Griswald vs. Sheldon, p.* 581, was where the property was claimed under a chattel mortgage which contained a stipulation that the mortgagor should retain possession of the goods, and conferred on him the power to sell and dispose of them as his own, therefore held void as to creditors.

The case cited by Appellant in 5 *Selden, p.* 212, *Edzell vs. Hart*, was a case where the Plaintiff claimed a stock of goods under a chattel mortgage which contained a stipulation that the mortgagor should remain in possession, and further stipu-

lations which the Court said by necessary implication author-
izes him to sell the goods as his own for cash, held that the
mortgage was void upon its face as to creditors.

The case cited in *3d Kernan*, *p. 577*, *Ford et al. vs. Wil-
liams*, it was held that where the mortgagor of a stock of goods
is allowed by the mortgagee to retain and sell them at retail, at
his discretion and for his own benefit, the mortgage is fraud-
ulent as to creditors.

On the trial the judge charged that the mortgage was pre-
sumptively fraudulent, and the burden of showing it honest
was on the mortgagees, and the charge was held to be correct.

The case cited by the Appellant in 19 *N. Y. Reports*, *p.*
123, arose upon a chattel mortgage containing a similar agree-
ment to those above mentioned.

Thus it will be seen upon examination that no one of the
cases cited by the Appellant upon this point, even tends to
support his theory, or is at all applicable to the question in
the case at bar.

All these cases arose upon the express agreement of both
parties to the instrument, and was contained in the instru-
ment. But in this case the question is based upon the mental
intention of the assignors, not expressed by them or assented
to by the assignee.

But let us examine this question in another aspect.

The theory of the Defendant is based entirely upon the in-
tention of the assignor at the time of the assignment. The
assignment is valid and free from objection upon its face,
when it was delivered to, and the trust accepted by the as-
signee, all the creditors became interested in and acquired the
right to have the trust executed and carried out according to
the terms of the assignment.

Now in the language of the decision of the Court below
given upon the motion for a new trial, from which I quote :

" Suppose that the jury were satisfied that the assignors
did intend to have the business carried on as usual, is that
conclusive ? Must it not appear that the assignee knew of
such intent and coincided or co-operated in carrying it out ?
May the assignee not show that he was acting in good faith
and in strict conformity to the terms of the assignment, and

show that the assignors had precluded themselves from effecting their purpose by executing a valid assignment and selecting an honest assignee to carry it out. The Defendants' position amounts to this, that no matter how honest the assignee is, or how perfectly valid the assignment itself may be, no matter how fairly and expeditiously the assigned property may have been disposed of and applied to the purposes specified in the assignment, if the assignors intended a fraud, though such intent did not become operative upon the property, the assignment is void, and a creditor levying upon the assigned property will be protected. I cannot think that this doctrine will be sustained; certainly none of the authorities cited sustain it. In those cases the question arose upon the face of the instrument, and where there was no evidence to counteract the presumption of fraud, and it was properly held that the question was one of law, and not of fact. But there is a plain distinction between a case where by the terms of the instrument (binding upon the assignor and assignee) that must necessarily result in delay to creditors, or legal fraud, and a case where the instrument is valid, and the assignee gives evidence of good faith on his part and only the intent of the assignor is shown or claimed to be fraudulent; in the latter case (which is substantially this case,) the most that can be claimed is that such intent of the assignor, if found, is strongly indicative of that measure and completeness of frauds which will vitiate the assignment, though liable to be disproved or rebutted by evidence of good faith on the part of the assignor, and a fair and speedy disposition of the trust property."

In support of the views here expressed, see *Burrill on Assignments, pp.* 395-6; 4 *Sandford,* 287; 6 *Hill.,* 438.

ALLIS & PECKHAM, Counsel for Appellants.

M. E. AMES, with SMITH & GILMAN, Counsel for Respondent.

*By the Court*—ATWATER, J.—The counsel for the Defendant requested the Court to charge the jury, " that the assignee had no right to carry on the business at retail, and

that if it was so intended by the assignors, at the time of the assignment, it is void." The Court refused so to charge, but charged that the assignee had no right to carry on the business at retail, and that if it were so intended by the assignors, such intent would be strongly indicative of fraud, but that the question would be for them to decide.

The Court was further requested to charge, " that if the intent of the assignors at the time the assignment was to prevent a forced sale of their property and in order that the business might be continued, and the goods sold at retail, the deed is void." The Court refused so to charge, but charged that it was a question for the jury, and that such intent, if so found, would be strongly indicative of fraud.

We think the learned judge erred in refusing to charge as requested, especially in the form last stated. This Court has repeatedly held that an unlawful intent appearing on the face of the instrument, (in cases of voluntary assignments) would vitiate the conveyance. 2 *Min.*, 264, *Greenleaf vs. Edes*; 3 *Ib.*, 364, 377, 389; 4 *Ib.*, 204. Certainly there can be no difference in principle, or in the nature of the fraud, whether the unlawful intent appear on the instrument of conveyance, or be discovered by evidence *aliunde*. The statute is broad, and makes every conveyance made with the intent to hinder, &c., void as against the person so hindered, &c. Whenever the obnoxious intent is proved, the law declares the conveyance void, and the jury have nothing further to do with the matter. Where the language or provisions of the instrument betray the intent, the proof is deemed conclusive, and there is nothing to submit to a jury. Where such is not the case, and the jury find the intent from extrinsic evidence, the result is equally fatal to the validity of the conveyance. *Sec.* 4 *of chap.* 51, *of Comp Stat.*, is not more applicable to a case submitted to a jury, where the question of fraudulent intent is involved, than to any other; for if anything more is to be ascertained by a jury than the existence of a certain intent, then, however palpably fraudulent an instrument of assignment might appear on its face, it must still be submitted to a jury. But where the intent to do a certain act is admitted or proved, and the necessary consequence or result of that act

is to hinder, delay or defraud creditors, it would be idle to permit a party to go to a jury on the question of the legality of such act. The Courts have uniformly refused it, and it is to be hoped that the salutary rule which has been established is not soon to be changed.

The New York statute relative to fraudulent conveyances, (of which ours is a copy,) has been more fully discussed in the Courts of that State, than almost any other branch of the law, and it is unnecessary here to travel over the ground which has been so thoroughly examined. We gather as the result of their investigations, that the question of fraudulent intent is a mixed question of law and fact, that is, that the question of the existence of a certain intent is a question of fact for the jury, (when not disclosed by the papers) and for the Court to declare whether such intent be fraudulent or otherwise. This view we think consistent with the language of *sec.* 4 *of chap.* 51, above cited. I think the true meaning and fair construction of the language there used, is the same as though it read "the question of the existence of fraudulent intent in all cases," &c., and if so read, it could scarcely be claimed that the Statute authorized the jury to determine what constituted a fraudulent intent. If the jury find "the intent of the assignors at the time of the assignment, was to prevent a forced sale of their property in order that the business might be continued and the goods sold at retail," the effect of such intent upon the conveyance must be precisely the same, as if such intent had been written out in the instrument of conveyance itself. Nor would the fact that the assignee had no knowledge of such intent, render the assignment any the more valid. It is the fraud on the part of the party making the conveyance that the statute is intended to reach, and the innocence of the assignee in the premises, cannot cure the fraud in the makers. *Secs.* 1 *and* 5 *of chap.* 51 clearly show that the fraudulent intent on the part of the maker of the conveyance is what vitiates the same, and indeed, it must be apparent that any other construction would render the statute almost wholly nugatory. And see *Hildreth vs. Sands,* 2 *Johns. Ch. R.,* 42-3, and cases there cited; *Burr. on Ass.,* 2d *Ed., p.* 422; 1 *Sand., Ch. R.,* 85; 18 *Bar.,* 272; 24 *Barb.,* 120-1; 10 *Pick.,*

408; 1 *Curtis*, 157.  We do not understand the remarks in *Sands vs. Hildreth*, 14 *John.*, 493, to conflict with the views here expressed, as an assignee of an insolvent, accepting the trust for the benefit of creditors, is not regarded as a purchaser for a valuable consideration.

Assuming therefore, that the jury find that the intent of the assignors at the time of the assignment was to prevent a forced sale of their property in order that the business might be continued and the goods sold at retail, was the Defendant entitled to the charge that the deed was void?  We think he was, and that the Judge erred in refusing so to charge.  The law recognizes and tolerates no right on the part of an insolvent assigning for the benefit of creditors, to interfere with or make any arrangement whatever with reference to the assigned property after its transfer to the trustee.  The only intent consistent with the *bona fides* of the transaction on his part is, that the property be devoted absolutely, unreservedly, and in the shortest time possible for the best interests of his creditors, to the payment of his debts.  The law regards the property of the debtor as of right, belonging to his creditors, and sanctions no scheme or device to deprive them of it.  The intent to prevent a forced sale of the property alone, might not be inconsistent with the purpose to protect the rights and interests of creditors, but such an intent harbored with the design of continuing the business and selling the goods at retail, is clearly inconsistent with such purpose, or at least, if carried into effect, might indefinitely prolong the time of payment, if not entirely prevent it.  The law declares such intent fraudulent, and it is not for the jury to say, that in fact it was not so.  *Griswold vs. Sheldon et al.*, 4 *Comstock*, 581; *Edgill vs. Hart.*, 5 *Sel.*, 218; *Ford et al. vs. Williams*, 3 *Ker.*, 577; 19 *N. Y.*, 123, and cases cited.  In the most or all of these cases the intent declared fraudulent appeared on the face of the instrument of conveyance, but as in the view of this Court it makes no difference whether the intent so appear, or from evidence *aliunde*, the principles there established are applicable to the case at bar.

The judgment is reversed and a new trial granted.