E. T. BUSH, JR., A. H. BUSH, JAMES C. BUSH, *Trustee,* MARY A. BUSH, *Guardian,* AND H. M. JACKSON, *Guardian ad litem of Harry Rigg and Dora Rigg, Minors,* v. T. G. BUSH, R. D. HUNTER, AND A. P. BUSH, JR., *Partners as T. G. Bush & Co.,* AND THE PLANTERS AND MERCHANTS MUTUAL INSURANCE COMPANY.

1. CONVEYANCE; *Mistake in Description; Correction.* Where the parties executing a mortgage intended to convey all their real estate in a certain county in this state, and the grantees also intended to have the conveyance embrace all the lands actually owned by the mortgagors in said county, and in writing out the mortgage a mistake was made in the description of the land intended to be mortgaged in copying the description from a tax receipt, *held,* the mistake in the description is one that a court of equity will correct so as to conform to the actual intention of all the parties thereto.

2. MUTUAL MISTAKE; *Reformation; Debtor and Creditor.* Where a mutual mistake is made in the description of the land intended to be mortgaged, the same may be reformed at any time while the title of the land remains in the mortgagor; nor can attaching creditors of the mortgagor

successfully object to the reformation of the mortgage, as their lien is only upon the lands and tenements of the mortgagor, and not upon lands and tenements not in fact belonging to him. In such a case, the land intended to be mortgaged is in equity the land of the mortgagee for the purpose of securing the payment of the debt of the mortgagor.

3. GUARDIAN AND WARD; *Trust Funds Lent; Consideration.* Where A and B are administrators of an estate of which there are minor heir s and before there has been any distribution of the estate the share of the minors therein is estimated, and B, as guardian of said minors, gives a bond as guardian, and thereafter, as guardian, loans the trust funds in his hands to a firm of which he is a partner, a note and mortgage given by the firm to B, as guardian of the minors, for the money so loaned, cannot be said to be without consideration. *Held, further,* That, where the note is payable "to the order of B, gd. of the minors," and the mortgage sufficiently recites that the conveyance is made for the purpose of securing B, as guardian of the minors, on account of the indebtedness of the firm of which he is a partner, to the minors, the note and mortgage do not show upon their face an attempt upon the part of B to withdraw his property from the reach of the creditors of the firm, but an indebtedness, secured by a mortgage, due the minors.

4. TRUST FUNDS LENT; *Partnership; Rights of Ward.* Where a guardian loans the trust funds in his hands to a firm of which he is a member, with the knowledge of his other partners, it becomes a partnership debt, and the successor of such guardian, in the interest of his wards, has the right to elect to consider the money as a loan, or to hold the former guardian responsible on his official bond.

5. MORTGAGE, *in Excess of Debt.* The mere fact that a mortgage given by an insolvent person secures a greater sum than is actually due, is not conclusive of fraud.

*Error from Atchison District Court.*

ON March 14, 1881, *E. T. Bush jr.* and *A. H. Bush* owned 92-224ths of the following-described lands in Atchison county, in this State: The north half of section 20, township 7, range 19; the southeast quarter of section 20, township 7, range 19; and the east half of section 21, township 7, range 19. They had no interest in any other lands in said Atchison county. On March 14, 1881, said E. T. Bush jr. was guardian of the estate of Harry Q. Rigg and Dora Rigg, minors, and as such guardian had prior to that time loaned to the firm of Bush, Yates & Co. (a firm composed of said E. T. Bush jr. and of said A. H. Bush and one L. T. Yates, doing business in Mo-

bile, Alabama) about $22,000. At that time said indebtedness was supposed to amount to $24,500, but in fact it was very little more than $22,000. On March 14, 1881, Bush, Yates & Co. were in failing circumstances, their liabilities being about $500,000, and their partnership and individual effects probably one-half of that sum. On March 14, 1881, to secure the said minors, Harry Q. Rigg and Dora Rigg, against loss on account of the funds so used by the firm, said Bush, Yates & Co. executed two notes, which were to become due January 1, 1882. One of said notes was for $5,000, a copy of which is as follows:

"$5,000. MOBILE, ALABAMA, March 14, 1881.

"On January 1, 1882, after date we promise to pay to the order of E. T. Bush, gd. of Harry and Dora Rigg, five thousand dollars, at Macon, Miss., with 8 per cent. interest from date until paid; value received. BUSH, YATES & Co."

At the same time the said firm executed another promissory note, in all respects conditioned as said $5,000 note, except that the amount to be paid thereon was $19,540. The promissory note for $19,540 was secured upon property in Mississippi of the value of about $17,000; the promissory note for $5,000 was secured, or attempted to be secured, as follows: E. T. Bush jr. and A. H. Bush executed a trust deed to one James C. Bush, as trustee for said minors, intending in said trust deed to describe and convey the said lands hereinbefore mentioned, but by mistake two quarter-sections of land were incorrectly described in such trust deed, and two other quarter-sections were described therein; but in these quarter-sections neither E. T. Bush jr. nor said A. H. Bush had any interest. Concerning the execution of this trust deed, the finding of the district court is as follows:

"The lands in fact owned by said E. T. Bush sr. in his lifetime, in Atchison county, Kansas, were N. $\frac{1}{2}$ and S. E. $\frac{1}{4}$ of section 20, and E. $\frac{1}{2}$ of section 21, being five quarter-sections, all in township 7, of range 19, and neither he nor his said heirs owned any other land in Atchison county, Kansas; and said A. H. Bush and E. T. Bush jr. intended, in executing said trust deed, to pledge the interest which they had in the

lands owned by said E. T. Bush sr., in said Atchison county, at the time of his death, and they had no interest in any other lands in said Atchison county; but they did not know the correct description of all of said lands, and they entirely omitted to describe N. E. $\frac{1}{4}$ section 21, T. 7, R. 19, and N. W. $\frac{1}{4}$ section 20, T. 7, R. 19, but instead thereof they described N. E. $\frac{1}{4}$ section 21, T. 7, R. 18, and N. W. $\frac{1}{4}$ section 20, T. 7, R. 17. Neither said James C. Bush, trustee, nor said W. N. Bogle, knew the correct description of the lands intended to be pledged, but understood that they were the lands which had belonged to said E. T. Bush sr., deceased, and they were willing to accept any security which said firm of Bush, Yates & Co. might choose to give; and the work of securing preferred creditors was done in such haste as not to admit searching for all the papers necessary to insure correctness."

Said trust deed was forwarded to the register of deeds of Atchison county for record, but owing to some defect in the acknowledgment it was returned for correction without being filed or recorded. On March 23d and 24th, 1881, T. G. Bush, R. D. Hunter, and A. P. Bush, partners as T. G. Bush & Co., and the Planters and Merchants Mutual Insurance Company, commenced attachment suits in the district court of Atchison county, in this state, against Bush, Yates & Co., to recover several sums of money, aggregating over $16,000, and on said days caused all of said lands to be attached as the property of Bush, Yates & Co. In the attachment suits, on July 12, 1882, judgments were entered and the same made liens on the lands attached, and the lands ordered to be sold in satisfaction thereof; the judgments were rendered upon notice by publication only. A. P. Bush jr., one of the plaintiffs of the firm of T. G. Bush & Co., and acting also as agent for the Planters and Merchants Mutual Insurance Company, before commencing said actions of attachments went to the office of the register of deeds of Atchison county, to ascertain whether there had been any transfer of the Bush lands, or whether they still belonged to the heirs of E. T. Bush, deceased. He learned there was no record of any change in the title, nor of any incumbrances, but the deputy register of deeds informed him that an instrument in the nature of a trust deed had been sent to the office for

record, but that it had been returned because not made in conformity with the laws of Kansas. On further inquiry he learned that the instrument was in favor of the Rigg children, and for the sum of $5,000, but this was all that he then could learn in the office about it. Some time after the trust deed of March 14, 1881, had been executed, it was discovered by some person that a mistake had been made in describing two of the said quarter-sections intended to be embraced therein, and on April 25, 1881, A. H. Bush and his wife and said E. T. Bush jr. and his wife executed and acknowledged another trust deed to secure the same indebtedness of $5,000, embracing the lands in controversy, and said trust deed was duly filed in the office of the register of deeds on May 4, 1881, at 8:30 o'clock A. M., and thereafter duly recorded in book 56 on page 411 of the records of said office. The trust deed of March 14, 1881, was correctly acknowledged and approved according to the laws of the state of Mississippi, where the same was executed, but was not acknowledged according to the laws of this state, where the lands therein described are situated.

On August 22, 1881, this action was commenced by *T. G. Bush & Co.* against *Bush, Yates & Co., The Planters and Merchants Mutual Insurance Company, Harry Rigg* and *Dora Rigg,* and others, to marshal the liens of various parties and to obtain an order of sale of the lands attached as the property of Bush, Yates & Co. The insurance company answered, admitting all the facts alleged in the petition, and also filed its cross-petition asking that its judgments be adjudged a lien second in priority for the amount thereof. James C. Bush, as trustee in said trust deed for the minor children, filed his answer and cross-petition asking that the claim stated in his trust deed, to the extent of the debt thereby secured, be adjudged a first and prior lien upon all the lands in the county of Atchison, in this state, owned by E. T. Bush jr. and A. H. Bush at the time they executed their trust deed of March 14, 1881; M. A. Bush, as guardian of the minor children, also answered therein, and adopted the cross-petition of the trustee and asked for like relief as guardian of the minors; H. M. Jackson was

appointed guardian *ad litem* for the minors, and answered as such.

On the trial the court found and stated its conclusions of fact and of law, and decreed that T. G. Bush & Co. had a first and prior lien upon the undivided 90-224ths interest of E. T. Bush jr. and A. H. Bush in the northeast quarter of section 21, township 7, range 19, and in the northwest quarter of section 20, township 7, range 19, and that their lien upon the other quarter-sections of land was subsequent to the lien of M. A. Bush as guardian and James C. Bush as trustee of Harry Rigg and Dora Rigg; that the Planters and Merchants Mutual Insurance Company had a lien on the undivided 90-224ths interest of said E. T. Bush jr. and A. H. Bush in the northeast quarter of section 21, township 7, range 19, and the northwest quarter of section 20, township 7, range 19, next to the lien of T. G. Bush & Co., but that the lien of the insurance company upon the other quarter-sections of land was also subsequent to the lien of M. A. Bush as guardian and James C. Bush as trustee of Harry Rigg and Dora Rigg, and also subsequent to the lien thereon of T. G. Bush & Co.; that M. A. Bush as guardian of Harry Rigg and Dora Rigg, and James C. Bush as trustee of said Harry Rigg and Dora Rigg, had a first and prior lien upon the undivided 90-224ths interest of said E. T. Bush jr. and A. H. Bush in the northeast quarter of section 20, township 7, range 19, and in the southeast quarter of section 21, township 7, range 19, to secure the payment of the sum of $4,600 and interest thereon at 8 per cent. per annum from March 14, 1881, amounting in all to $5,630.40; but that their lien upon the other quarter-sections of land in controversy was subsequent to the lien of T. G. Bush & Co., and also subsequent to the lien of the Planters and Merchants Mutual Insurance Company. The lands were adjudged to be sold and the liens thereon to be satisfied in the order of their priority as found by the district court. Exceptions were taken to the conclusions of fact and conclusions of law found by the district court, by the several parties affected thereby; exceptions were also taken to the judgment rendered by said

36 — 33 KAS.

parties.   A petition in error has been filed in this court by the
parties representing Harry Rigg and Dora Rigg, minors; a
petition in error has also been filed in this court by T. G. Bush
& Co. and the Planters and Merchants Mutual Insurance
Company.

*Jackson & Royse,* for plaintiffs in error.

*Everest & Waggener,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It is claimed by the trustee and guardian
of Harry Rigg and Dora Rigg, minors, that upon the plead-
ings, evidence and conclusions of fact, they are entitled to a
decree that under the trust deeds executed March 14, 1881,
and April 25, 1881, the debt intended to be secured thereby
is a prior lien to the attachment liens of T. G. Bush & Co.
and the Planters and Merchants Mutual Insurance Company
upon all the lands in controversy.   The judgment rendered
by the trial court was in effect that the trustee and guardian
of Harry and Dora Rigg, minors, had a prior lien upon the
lands of A. H. Bush and E. T. Bush jr., correctly described
in the trust deed of March 14, 1881, and as to the lands in-
tended to be, but which were not, correctly described therein,
that the attaching creditors had the first lien.   We think the
claim of the trustee and guardian of the minor children well
founded.  ° The trust deed or mortgage of March 14, 1881, as
against A. H. Bush and E. T. Bush jr., the grantors therein
named, was valid without recording; and although there was
a mistake made in the description of the land intended to be
mortgaged, the same might have been reformed at any time
before the land had passed to purchasers for a valid considera-
tion without notice.   If the attaching and judgment creditors,
without notice of the defect in the first trust deed, had become
the purchasers of the land, a different question would be pre-
sented; but the lands have not yet been sold under the orders
of sale.   The only liens that T. G. Bush & Co. and the Plant-
ers and Merchants Mutual Insurance Company obtained under

their attachments were upon the lands and tenements of the debtors they sued, and such attachments were not liens upon the lands and tenements not in fact belonging to the debtors at the date of the attachment. (*Holden v. Garrett*, 23 Kas. 98; Comp. Laws 1879, ch. 22, §§ 20, 21; Code, §§ 190, 193; *Harrison v. Andrews*, 18 Kas. 542; *Swarts v. Stees*, 2 id. 236; *National Bank v. Wentworth*, 28 id. 183.)

After the execution of the trust deed of March 14, 1881, which was followed up by the execution of the trust deed of April 25, 1881, to correct the description in the original trust deed, the lands in controversy were in equity the lands of the grantees therein for the purpose of securing the payment of the $5,000 mentioned in the deeds. The evidence, we think, clearly shows that the trust deed of March 14, 1881, was intended to transfer for the security of the debt therein named, all the real estate in Atchison county, in which E. T. Bush jr. and A. H. Bush had any interest. Upon this point, it was in substance as follows:

"In making the trust deed of March 14, 1881, to James C. Bush, E. T. Bush jr. and A. H. Bush intended to convey the northeast quarter and the southeast quarter of section 21, and the southeast quarter and the northeast quarter and the northwest quarter of section 20, all in township 7, of range 19, in Atchison county, Kansas. In making such deed, they took the description from a tax receipt, and by mistake described one of the quarters as being in township 7, of range 18; and one as being in township 7, of range 17; but it was the intention of the grantors and James C. Bush, the trustee, to make the trust deed convey the lands in said county, formerly owned by E. T. Bush sr., deceased."

There are some decisions that a mistake concerning matters as to which the parties had "means of knowledge," or "might have ascertained the truth," will not be relieved from; and the trial court seems to have decided the case upon this theory, as one of its findings shows that "the work of securing preferred creditors was done in such haste as not to admit searching for all papers necessary to insure correctness." These decisions have been expressly overruled, and the conclusion

from the best authorities seems to be, that every negligence will not stay the hand of a court and prevent a reformation or ·correction of a written contract, deed, or mortgage. The neglect must amount to a violation of a positive legal duty. The highest positive care is not demanded. (2 Pomeroy's Eq. Jur., § 856.)

On the part of T. G. Bush & Co. and the Planters and Merchants Mutual Insurance Company, attaching creditors, it is urged that there was no consideration for the note of $5,000, ·executed on March 14, 1881. The findings are otherwise. On the books of the firm of Bush, Yates & Co., E. T. Bush jr., as guardian, was charged with the sum of $7,000; this was money which came into his hands as guardian, and had been used in the business of the firm. It is immaterial whether any share of the minors had been set apart to them, or not. The findings show that the amount of their distributive share had been estimated at a sum in excess of $20,000, and if the guardian of the minors had received $7,000, or any other sum in excess of $5,000, from the administrators of the estate of E. T. Bush sr., and held the same as the guardian of the minor children, or had used the same in the firm of Bush, Yates & Co. as the money of said minor children, such minors were certainly entitled to such money so received and used as their property.

It is next insisted by the attaching creditors that the words "gd. Harry and Dora Rigg," in the note of March 14, 1881, are descriptive only of the said E. T. Bush jr., and that the note conclusively shows that E. T. Bush jr. attempted to withdraw his property from the reach of the creditors of Bush, Yates & Co.; in other words, that E. T. Bush jr. executed the note to himself, and the mortgage on his individual property to the trustee to secure the note he had executed to himself. The lien of the trustee and guardian of Harry and Dora Rigg is based not merely upon the note of March 14, 1881, but upon the trust deed executed upon that date, and upon the later trust deed of April 25, 1881, correcting the description in the original trust deed. These trust deeds are to James C.

Bush as trustee of Harry and Dora Rigg, and recite that said conveyance is made in trust for the following purposes only, namely:

"The first parties [A. H. Bush and E. T. Bush jr.] are justly indebted to the third parties [Harry Rigg and Dora Rigg] in the sum of $5,000, evidenced by the promissory note of Bush, Yates & Co. bearing even date herewith and due and payable January 1st, 1882 — said A. H. Bush and E. T. Bush being members of said firm — said note being payable to E. T. Bush, guardian of Harry and Dora Rigg, which indebtedness the first parties desire and intend by this deed the more effectually to secure and make certain the payment thereof. Now if the first parties shall pay off and discharge said indebtedness at maturity, with all interest and cost and expenses then incurred, said deed is to be entirely void, and the second party [James C. Bush] is to take such steps as may be necessary in law to effectually recover said property to the first parties. If default should be made in the payment thereof, the second party, as trustee aforesaid, shall, at the request of said third parties, take possession of said property," etc.

These trust deeds therefore show that the purpose of their execution was in effect to secure the indebtedness due to Harry and Dora Rigg, and not to withdraw the property of E. T. Bush jr. from the reach of his creditors. Further, it appears that on June 8, 1881, said E. T. Bush jr. was removed as guardian of Harry and Dora Rigg. On June 9, 1881, M. A. Bush was appointed as his successor, and this note of $5,000 was transferred to her as the property of her said wards.

It is urged further, that there was no consideration for the trust deed, because E. T. Bush jr. as guardian had no authority to loan funds in his hands belonging to Harry and Dora Rigg to the firm of which he was a member; that the note executed by him could not take the place of the official bond given by him to protect his wards; and that if he did loan to Bush, Yates & Co. any moneys of his wards, it was a misappropriation of trust funds, for which he alone is responsible; that as a guardian, E. T. Bush jr. had no right to substitute his note for his official bond. This point is not well taken. If a guardian, or other trustee, who is a member of a

firm, uses the trust funds in the partnership business, with the knowledge of the other partners, it becomes a partnership debt to the *cestui que trust*, and the latter may follow the trust fund so used and recover the same. (*Ellicott v. Barnes*, 31 Kas. 170; *Merket v. Smith*, ante, p. 66.) If the loan to Bush, Yates & Co. by E. T. Bush jr. was improper, the guardian of the wards who succeeded E. T. Bush jr. had the right to elect to consider the money so used as a loan, or to hold the former guardian responsible on his official bond. (*Gully v. Dunlap*, 24 Miss. 410; *Wood v. Stafford*, 50 id. 370.) In this case it appears that the amount due the minor children was $22,782.51; the official bond of E. T. Bush jr. as guardian was $15,000 only, and said guardian is insolvent. Under these circumstances it was the duty of M. A. Bush, as guardian of the minors, to elect in favor of the securities executed by A. H. Bush and E. T. Bush jr.

It is finally insisted, that as the indebtedness to the minors was a little over $22,000, and as one note for $19,540 was executed and another for $5,000, that there was included in the notes $2,540 more than was due to the minors, or their guardian; and therefore the trust deed must be regarded as fraudulent, as tending to hinder and delay creditors. Bump on Fraudulent Conveyances is cited to the effect that there is no difference in principle between fraud in fact and fraud in law; and it is sought to apply this principle to the trust deeds executed to secure the minors. The cases cited by Bump are voluntary assignments, with an unlawful intent appearing on the face of the instruments. (*Bank v. Talcott*, 19 N. Y. 146; *Gere v. Murray*, 6 Minn. 305.)

The rule stated in those cases is, that —

"When upon the face of the assignment any illegal provision is found, the presumption at once conclusively arises that such illegal object furnished one of the motives for making the assignment; and it is upon this ground adjudged fraudulent and void. The result is the same when the illegal design is established by other evidence. The inquiry is as to the intention of the assignor. When it appears that among the inducements operating upon him, there was an intention to violate

any of the duties owing by him to any of his creditors, the whole instrument is tainted, and will be set aside at the suit of any creditor: the rule applied to instruments of this character being, that they must be wholly valid or they are entirely void."

This rule is not applied in case of a mortgagor securing the debt of a *bona fide* creditor, where by mistake merely the amount of the debt secured by the mortgage is slightly overestimated. Mr. Jones, in his work on Chattel Mortgages, says: "But the mere fact that the mortgage secures a greater sum than was actually due, is not conclusive of fraud." (Sec. 339.)

In *Wood v. Scott*, 55 Iowa, 114, it is held that where a mortgage is given by an insolvent person for more than is due, and the fact of the insolvency is known to the mortgagee, such mortgage is a badge of fraud, but is not conclusively presumed to be fraud. In that case, Chief Justice Adams, speaking for the court, says: '

"Now while such a transaction is not to be commended, it is evident that there might have been no actual intent upon the part of the plaintiff to defraud the creditors of his mortgagor. It is insisted, however, that as this mortgage had the effect to conceal Lovett's property and hinder and delay his creditors, no honesty of intention on the part of the plaintiff should prevent a court from holding the mortgage fraudulent and void. Whatever the rule may be in other states, we think that such cannot be held to be the rule in this."

(See also *Hughes v. Shull*, ante, p. 127; *Minor v. Sheehan*, 30 Minn. 419; *Tulley v. Harloe*, 35 Cal. 302; *Willison v. Desenberg*, 41 Mich. 156; *Berry v. O'Conner*, 31 Alb. L. J. 357.)

In *Wallach v. Wylie*, 28 Kas. 138, the mortgage was held void because of the intention participated in by all the parties to overstate the amount of the debt secured, with the fraudulent intent to hinder, delay and defraud creditors. For the same reason, the written instrument in *Winstead v. Hulme*, 32 Kas. 568, was held void.

In regard to the execution of the mortgage of March 14, 1881, a reasonable explanation may be found for the overstate-

ment of the debt secured, owing to the haste in which it was executed; and it is clearly apparent to us, from the record, that there was no actual intent on the part of any of the parties executing this trust deed to overstate the debt to defraud any creditors. The judgment of the district court will be modified so as to make the trust deed executed to James C. Bush, as trustee, on March 14, 1881, a first and prior lien upon all the lands in Atchison county intended by the parties thereto to be described therein.

All the Justices concurring.