**In re Gerald Marshall OWEN, Debtor.**

**CITADEL BANK OF AUGUSTA, Plaintiff–Appellant,**

v.

**Joseph I. WITTMAN, Trustee, and Gerald Marshall Owen and Patricia J. Owen, Defendants–Appellees.**

**Bankruptcy No. 88–4142–R.**

United States District Court, D. Kansas.

May 19, 1989.

James R. Gilhousen, Crockett, Keeley & Gilhousen, Wichita, Kan., for plaintiff-appellant.

James L. Hargrove, El Dorado, Kan., for defendants-appellees.

Joseph I. Wittman, Topeka, Kan., trustee.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal which derives from an adversary proceeding brought by the Citadel Bank of Augusta. There is no serious dispute as to the facts in this case. The issue on appeal is a question of law. Therefore, the decision of the bankruptcy court is freely reviewable. *In re Yeates*, 807 F.2d 874, 877 (10th Cir. 1986).

The bankruptcy court accepted the following stipulated facts of the parties:

1. On September 11, 1985, Gerald M. Owen (the Debtor herein) and Patricia J. Owen, as grantors, executed a Quit Claim Deed to Patricia J. Owen, as grantee, of four separate parcels of real estate in Butler County, Kansas. The Quit Claim Deed was recorded with the Register of Deeds of Butler County on September 13, 1985, in Book 382 of Deeds at Page 88 (a copy of the Deed is attached hereto as Exhibit A).

2. One of the parcels in the Quit Claim Deed is described as follows:

Beginning 922 feet West and 873.33 feet South of the Northeast Corner of the West Half (W/2) of the Northwest Quarter (NW/4) of Section *33*, Township *25* South, Range 5 East of the 6th P.M., thence West 82.73 feet, North 187.40 feet, East 82.73 feet, South 187.40 feet, to the place of beginning.

Neither Gerald Marshall Owen nor Patricia J. Owen ever owned an interest in the described real estate.

3. On September 11, 1985, Gerald Marshall Owen and Patricia J. Owen did own the following described real estate:

Beginning 922 feet West and 873.33 feet South of the Northeast Corner of the West Half (W/2) of the Northwest Quarter (NW/4) of Section *3*, in Township *26* South, in Range 5 East of the 6th P.M., thence West 82.73 feet, thence North 187.40 feet, thence East 82.73 feet, thence South 187.40 feet, to the place of beginning.

4. On September 23, 1986, Citadel Bank of Augusta was awarded a judgment against Gerald Marshall Owen in the District Court of Butler County, Kansas, Case No. 86–C–276. The lawsuit in which judgment was rendered was filed on May 14, 1986. A copy of the Journal Entry in favor of Citadel Bank is attached hereto as Exhibit B.

5. On January 27, 1987, Gerald Marshall Owen filed his bankruptcy petition. Citadel Bank of Augusta duly filed its unsecured proof of claim for the amount of $43,503.21.

6. Subsequent to the bankruptcy, Patricia J. Owen sought to sell the real estate described in paragraph 3 above. At that time it was discovered that the real estate had been erroneously described in the Quit Claim Deed of September 13, 1985.

7. Thereupon, the Court, upon motion of the Debtor, permitted the sale to occur, and ordered that one-half of the net sale proceeds go to Patricia J. Owen and one-half of the net sale proceeds be held by the Trustee pending the current adversary proceeding.

The bankruptcy court made the following additional findings:

8. There is no evidence to show that the error in the deed was the result of fraud or an intent to hinder or delay creditors of Gerald Owen, but that the

error simply resulted from mutual mistake.

9. Patricia Owen states in her answer that the transfer was for tax and estate planning purposes and had nothing to do with the Bank's lawsuit or debtor's bankruptcy.

The issue in this case is whether the deed should be reformed to correct the misdescription so that Patricia Owen is considered the sole owner of all four parcels of land in Butler County owned previously by her with the debtor, in which case she receives the proceeds held by the Trustee; or whether the judgment lien of the Bank should be allowed to intervene, in which case the Bank is entitled to the proceeds held by the Trustee. As the appellant Bank puts it, the issue is whether a deed containing an erroneous description of real estate may be reformed so as to defeat the intervening lien of a judgment creditor.

The bankruptcy court held as follows:

[I]n true cases of mutual mistake where no fraudulent intent exists, a court may allow reformation as against an intervening judgment creditor. In this case, although the Bank's brief argues to the contrary, there is no evidence to suggest the Owens intended to delay or defraud their creditors in the transfer; in fact, the parties have stipulated that the "error" was not discovered until after the bankruptcy. Even had the parties not so stipulated, the Court finds that all the circumstances of the transfer point to a simple mutual mistake—the fact that three other parcels were transferred at the same time in which no error was made and the fact that transfer occurred a year before the Bank's lawsuit and two years before debtor's bankruptcy. Patricia Owen's contention that the transfer was for tax and estate planning purposes is thus plausible and is accepted by the Court.

The Court therefore holds that the Bank does not have an interest in the proceeds in question and that its complaint for turnover should be denied.

We affirm.

The general rule regarding reformation of a writing to correct a mutual mistake is found at RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981):

Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

According to comment f of the Restatement section, judgment creditors are *not* included as innocent third parties whose rights override the right to reformation. The same general rule is stated in 66 AM. JUR.2d *Reformation of Instruments* § 69 (1973) and Annotation, *Right to Reformation of Contract or Instrument as Affected by Intervening Rights of Third Persons*, 79 A.L.R.2d 1180, 1209 (1961).

The question becomes whether Kansas follows this general rule. It must be noted that both *American Jurisprudence 2d* and *American Law Reports* as cited above, state that the Kansas Supreme Court refused to follow the general rule in *Kirkpatrick v. Ault*, 177 Kan. 552, 280 P.2d 637 (1955). This case was considered by the bankruptcy court. Appellant contends that the bankruptcy court misapplied the *Kirkpatrick* case. We disagree.

In *Kirkpatrick*, a general warranty deed granting property to a husband and wife was filed on April 17, 1943. On July 6, 1943, a judgment was rendered against the husband. On December 27, 1943, a general warranty deed was filed "correcting" the previous deed by granting the property in question to the wife only. The court held that the second deed did not divest the husband of the interest in the property granted by the first deed and, therefore, the judgment lien could be enforced against that interest.

What is the effect of the "Correction Deed" filed for record December 27, 1943? The grantors in that deed are the same identical persons as the grantors in the deed filed for record April 17, 1943. By the earlier deed they conveyed all the

property with full covenants of warranty to the grantees therein named. The "Correction Deed" bears the date of February 8, 1943, which is the same date as the earlier deed but the respective grantors acknowledged the same at different places and on different dates in August, some of them August 2, and others as late as August 16, 1943. When it was delivered is not disclosed unless shown by the recording date. The grantors in that deed are the only persons who have said there was a mistake in the earlier deed, neither of the grantees said anything about that until the sheriff undertook to levy an execution on the property, July 27, 1952. Standing alone, it would not seem to convey anything more than if the grantee had been some third person.

▪▪ In 26 C.J.S., Deeds, § 31, dealing with the correction of deeds by subsequent instrument, the pertinent portions of the text read:

> "Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties. * * * As against third persons an alleged defective deed can be cured only by a bill in equity, and not by a confirmation assuming to relate back to the original deed. * * * Where the grantor has divested himself of title, although by mistake he has not conveyed the title in the way in which he intended, he cannot by a subsequent conveyance correct his mistake, there being no title remaining in him to convey, * * *."

Many other authorities to the same effect might be cited. We find none opposed to it. The result is that the correction deed did not have the effect of divesting A.W. Ault of the undivided one-half interest which he had in the property.

280 P.2d at 641.

We agree with the bankruptcy court that in *Kirkpatrick* there was no finding of *mutual* mistake ("[t]he grantors are the only persons who have said there was a

mistake"). Further, assuming the grantors did make a mistake in the first deed, the final part of the general rule cited from C.J.S. applied—"Where the grantor has divested himself of title, although by mistake he has not conveyed the title in the way in which he intended, he cannot by a subsequent conveyance correct his mistake, there being no title remaining in him to convey."

Accordingly, the result in *Kirkpatrick* is not controlling in this case, where there is a finding of mutual mistake. But, *Kirkpatrick* does suggest that Kansas follows the general rule, since the court cited the passage from C.J.S. and did not attempt to overrule prior Kansas cases which have applied the general rule, e.g., *Bush v. T.G. Bush & Co.*, 33 Kan. 556, 6 P. 794 (1885); *First National Bank of Parsons v. Wentworth*, 28 Kan. 129 (1882).

Finally, appellant suggests that Patricia Owen, the appellee, should not benefit from the equitable doctrine of reformation because she does not have clean hands. However, the bankruptcy court found no evidence of fraud. There has been no showing that this finding is clearly erroneous.

The bankruptcy court's order is affirmed. A copy of this order shall be transmitted to the Clerk of the Bankruptcy Court.

IT IS SO ORDERED.